2 Ill. App.2d 70 (1954)
118 N.E.2d 631
Robert E. Barrett, Director of Insurance of State of Illinois, as Liquidator of United States Mutual Insurance Company, Appellant,
v.
Continental Illinois National Bank and Trust Company of Chicago, Appellee.
Gen. No. 46,166.
Illinois Appellate Court.
Opinion filed February 24, 1954.
Released for publication April 22, 1954.
*71 *72 ETTELSON & O'HAGAN, of Chicago, for appellant; LEONARD B. ETTELSON, and ROBERT E. SAMUELS, both of Chicago, of counsel.
MAYER, MEYER, AUSTRIAN & PLATT, of Chicago, for appellee; FRANK D. MAYER, LOUIS A. KOHN, and DWIGHT W. FAWCETT, all of Chicago, of counsel.
MR. JUSTICE KILEY delivered the opinion of the court.
*73 This action was begun as an accounting suit by the United States Mutual Insurance Company against two of its officers. Subsequently the Director of Insurance of the State of Illinois was appointed liquidator of the Insurance Company, was substituted as plaintiff and filed an amended complaint of three counts. Only the amended count I of the amended complaint is material here. It charged the Continental Illinois Bank and Trust Company with negligence in paying a check for $217,500 drawn against the Insurance Company account by allegedly unauthorized persons. We shall refer to the Director of Insurance as plaintiff, to the United States Mutual Insurance Company as Company and to the Continental Illinois National Bank and Trust Company as Continental.
The trial court denied plaintiff's motion to strike Continental's answer, sustained Continental's motion for "judgment on the pleadings" and entered judgment accordingly. Plaintiff has appealed.
The following facts are admitted by the pleadings: In 1949 Carl Barrett and Evelyn Marks were respectively president-treasurer and secretary of the Company, and were also directors. May 4, 1949 the Company had an active checking account at the Northern Trust Company and an inactive checking account in the Continental. On May 4th and May 9th the sums of $125,000 and $100,000 respectively were transferred from the Northern Trust to the Continental account. At the time Continental had in its possession signature cards and Company resolutions designating persons authorized to draw checks against the Company account. On May 9th W.L. McFarling and John Doolin came to the "offices" of the Continental and represented themselves to be officers of the Company. They presented a check for $217,500 payable to the order of the Insurance Investment Corporation. That check was deposited *74 in that Corporation's account which had that day been opened in Continental. Thereafter cashier's checks for $165,000 and $35,000 payable respectively to Carl Barrett and Evelyn Marks were issued by Continental and charged to the Insurance Investment Corporation account.
The questions on appeal are: (a) whether the court erred in finding that by suing Carl Barrett and Evelyn Marks for an accounting an election was made precluding plaintiff from later suing Continental for damages resulting from its alleged negligence, (b) whether the Liability for Forged or Raised Checks Act [chap. 16 1/2, par. 24, Ill. Rev. Stat. (1953)] [Jones Ill. Stats. Ann. 10.35] applies so as to bar plaintiff's action and (c) whether plaintiff was prejudiced by "denial" of the right to reply to Continental's answer.
Plaintiff filed the amended count I on January 11, 1952. Continental answered. June 26, 1952 no reply had been filed and Continental moved for "judgment on the pleadings." The following day plaintiff moved to strike the answer and in support filed an affidavit and several exhibits. The trial court filed a "memorandum" March 27, 1953 which concluded by overruling plaintiff's motion to strike Continental's "motion for summary judgment" and "judgment is given to the defendant bank." April 2, 1953 the order appealed from was entered overruling plaintiff's motion, sustaining defendant's motion and dismissing amended count I.
[1-3] Continental's motion for "judgment on the pleadings" was not a motion used in place of a demurrer under section 45 of the Practice Act [chap. 110, Ill. Rev. Stat. [par. 169] (1953)] [Jones Ill. Stats. Ann. 104.045] because Continental had already answered setting up facts to lay the foundation for the application of the Liability for Forged or Raised Checks Act [Ill. *75 Rev. Stats. 1953, ch. 16 1/2, §§ 24, 25; Jones Ill. Stats. Ann. 10.35, 10.36] and to negative the charge of negligence in the complaint. Neither was it a motion for involuntary dismissal under section 48 of the Practice Act [Ill. Rev. Stats. 1953, ch. 110, § 172; Jones Ill. Stats. Ann. 104.048], because it pointed out none of the defects, claimable under that section, on the face of the complaint, and was not supported by affidavit pointing out any of those defects not appearing on the face of the complaint. We think we would not be justified in isolating any part of the sworn answer, disregarding the rest, and considering that part as the equivalent of such an affidavit. Moreover, section 48, as well as section 45, presupposes that the moving party considers the pleading attacked so insufficient as to obviate further pleading.
[4] Continental's motion was designed to present to the court for decision questions of law arising through lack of a reply. Considered in this light, the motion was superseded by plaintiff's motion made the following day "to strike the answer." A motion to strike is the usual vehicle to accomplish the design we attribute to Continental's motion. The Civil Practice Act makes no provision for "judgment on the pleadings" as such, except in sections 45 and 48. We need not decide whether the Summary Judgment section [chap. 110, par. 181, Ill. Rev. Stat. (1953)] [Jones Ill. Stats. Ann. 104.057] might be available were plaintiff basing his action on alleged breach of contractual duty.
[5] The trial court's memorandum relied upon the doctrine of election of remedies as authority for dismissal of count I. Appellee cites Kaszab v. Metropolitan State Bank, 264 Ill. App. 358, to sustain the dismissal on this ground. We hold there was no election because the original complaint justifies the inference *76 that the Company had no knowledge of the alleged unauthorized payment when it filed the accounting suit. Garrett v. John V. Farwell Co., 199 Ill. 436, 441. In the Kaszab case there was knowledge of facts upon which an intelligent choice could be made. The doctrine was erroneously applied by the trial court.
The amended count I charged negligence on the part of Continental in the payment of the check drawn by persons unauthorized under the Company's signature cards and appropriate resolutions. Continental's sworn answer alleged that McFarling and Doolin represented themselves to be officers and presented the checks "drawn in accordance with the signature card which had been furnished to the Bank." Under its separate defense number 1, Continental relied upon the Liability for Forged and Raised Checks Act to bar plaintiff's action. In number 5, it alleged that even if McFarling and Doolin were not authorized, Continental was not liable because it was entitled to rely "on the certified copies of corporate resolutions and signature cards which showed McFarling and Doolin as officers ... authorized to draw checks ... and which were presented to the Bank ... appeared proper and valid ... and were imprinted with the corporate seal...."
We need not discuss the question whether plaintiff waived a reply and, by standing on his motion, admitted the defenses. We think the liberal spirit of the Practice Act justifies the conclusion we are about to draw. The Act provides that pleadings shall be liberally construed with a view to substantial justice, § 33 (3), chap. 110, par. 157, Ill. Rev. Stat. (1953) [Jones Ill. Stats. Ann. 104.033, subd. (3)].
Plaintiff's motion was supported by an affidavit which set forth what transpired at the adjourned annual *77 meeting of the Company. This affidavit and the supporting exhibits tend to show that the meeting was held at 1:00 p.m. on May 9th and that the then Board of Directors, including Carl Barrett and Evelyn Marks resigned and McFarling and Doolin and their associates were elected successor directors. They tend to show further that the Board of Directors met the same day at 2:00 p.m. and elected McFarling and Doolin to succeed Barrett and Marks as officers of the Company and that McFarling and Doolin were duly "instructed and authorized to execute appropriate resolutions with the present depositories." The affidavit states that when the check was drawn neither McFarling or Doolin was an officer and neither was authorized to draw checks.
[6] We think these statements and exhibits, if embraced in a reply, would be sufficient to raise questions of fact on those parts of the answer which allege that when McFarling and Doolin drew the check the Bank was in possession of certified copies of resolutions bearing the imprint of the corporate seal appearing to authorize the transaction. Prima facie, the meetings were held at the time indicated in the minutes and presumably the check transactions took place during regular banking hours. The inference could be that when the transaction took place the Continental had no basis for relying on the apparent authority of McFarling and Doolin.
We think, therefor, that the spirit of the Civil Practice Act [Ill. Rev. Stats. 1953, ch. 110, § 125 et seq.; Jones Ill. Stats. Ann. 104.001 et seq.] required that plaintiff's motion be treated as a reply. In this view a judgment for Continental in the face of what is set up in the affidavit and exhibits with respect to the charge *78 of negligence was erroneous unless plaintiff is precluded under the Liability for Forged and Raised Checks Act [Ill. Rev. Stats. 1953, ch. 16 1/2, § 1 et seq.; Jones Ill. Stats. Ann. 10.01 et seq.].
[7] Plaintiff contends the Liability for Forged and Raised Checks Act does not apply in this case because what was admittedly done by McFarling and Doolin was not forgery. He argues that since they signed their own names they were guilty of the making of a false instrument and not the false making of an instrument. He cites English and American authority to support his theory that the making of a false instrument is not forgery. The Act does not define the term "forgery." We think, however, that our Supreme Court has decided against plaintiff's theory in the construction of the broad and comprehensive language of chap. 38, par. 277, Ill. Rev. Stat. (1953) [Jones Ill. Stats. Ann. 37.219]. The statute provides in part "... or shall utter, publish, pass or attempt to pass ... any of the above named false, altered, forged or counterfeit matters ... shall be deemed guilty of forgery...."
The Supreme Court in People v. Mau, 377 Ill. 199, found a defendant guilty of forgery in a case where he had signed his own name to a disbursement order  made a false order instead of falsely made an order  payable to a fictitious payee. The court on page 207 alluded to the above-quoted portion of the statute and said: "It is to be noted that in this part of the section `false' and not `falsely made,' is the term used." The case of People v. Kubanek, 370 Ill. 646, also supports our conclusion that the forgery statute is broad enough to comprehend the instant case. There the defendant exceeded his authority in completing a check and in diverting the funds and was convicted of forgery.
*79 [8] We think that the Legislature in enacting the Liability for Forged and Raised Checks Act intended at least as broad a conception of forgery to control the civil liability of banks as it expressed in defining the term in the Criminal Code. It would not be consistent to hold that Mau, authorized to sign disbursement orders, was guilty of forgery in signing his name and to hold also that McFarling and Doolin could not be guilty of forgery if they signed their names without authority. We are of the opinion that the conduct of McFarling and Doolin constituted forgery under the Illinois law.
The affidavit states in substance that wrongdoers were in control of the Company affairs from May 9, 1949 until December 20, 1950 when plaintiff was appointed liquidator; that in the interim the policyholders were not informed of the May 9th transactions and had no reasonable access to the information; and that they were first informed of the facts December 20, 1950. This was intended to toll the running of the limitation for suit in the Liability for Forged and Raised Checks Act. Its provisions preclude recovery for payment of a forged check unless the bank be notified of the forgery within a year after notice by the bank that the voucher representing payment of the check is ready or within a year after the voucher is returned to the depositor.
The trial court rejected plaintiff's argument that lack of knowledge of the check transaction tolled the beginning of the year within which notice is required. Had plaintiff set forth the averments with respect to lack of knowledge in a reply, it is likely that Continental would have moved to strike. The motion would have presented the question of the legal sufficiency of the *80 averments. Upon an adverse ruling by the court, plaintiff would have amended or stood by his reply. Amending, he would present further averments to supply the deficiency. Standing by his reply, the court would enter judgment for Continental.
[9] Were we to decide now that the "reply" is insufficient at law and that the judgment for Continental, though reached by irregular means, was the inevitable result, we might preclude plaintiff from the opportunity of doing what he might have done under regular procedure.
It is our opinion that, on the record presented to us, justice will be better served by reversing the judgment and remanding the cause for further proceedings. Under appropriate procedure the danger of prejudice to the rights of the parties will be obviated.
Reversed and remanded for further proceedings.
FEINBERG, P.J. and LEWE, J., concur.