William L. McFetridge, Appellee, v. The First Com-
mercial Bank (Impleaded With Howard K. Hur-
with), Appellant.

Gen. No. 48,231.

First District, Second Division.

January 24, 1961.

Floyd E. Thompson, Alan R. Johnston and Thomas W. McNamara, of Chicago (Thompson, Raymond, Mayer, Jenner & Bloomstein, of counsel) for appellant.

Arvey, Hodes & Mantynband, of Chicago (George L. Siegel and Edwin A. Wahlen, of counsel) for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court:

The defendant, First Commercial Bank, impleaded with Howard K. Hurwith, appeals from two orders, one granting a temporary injunction, and the second denying a motion to dissolve it. Defendant's motion to strike and dismiss the complaint was denied, a tem-

porary injunction was issued in accordance with plaintiff's prayer, defendant filed its verified answer, and plaintiff his verified reply. Defendant thereupon, pursuant to section 15 of the Injunctions Act (Ill. Rev. Stat. 1959, ch. 69), filed its motion to dissolve, which was denied.

The controversy was resolved on the pleadings. The injunctional order restrains the bank from taking any action to enforce a judgment by confession in its favor against plaintiff which was entered by the Superior Court of Cook County on August 3, 1960 in the case entitled First Commercial Bank v. McFetridge, No. 60 S 12 987. The total judgment was in the amount of $12,080.06, representing an $11,000.00 unpaid balance on a note, plus interest and attorneys' fees of $1080.06. The order also commands the bank to release and dismiss the citation proceedings to discover assets then pending in the Superior Court.

Plaintiff's complaint seeks an accounting and a dissolution of a joint venture between him and Howard K. Hurwith formed for the purpose of acquiring and operating the Empire Building in Syracuse, New York. It alleges that the joint venture is indebted to plaintiff and that Hurwith is indebted to the joint venture. The gravamen of the complaint, so far as it relates to the $11,000.00 note, is that the indebtedness represented by the note was that of the joint venture and not of plaintiff personally. The material allegations in the complaint which relate to the bank are contained in count III, in which it is alleged that the bank conspired with Hurwith, chairman of its board of directors, in seeking to impose upon plaintiff personally the liability of the joint venture represented by the $11,000.00 note. The bank filed its verified answer denying all the material allegations of the complaint; specifically, it denied that it ever had any dealings with Hurwith and McFetridge in connection with the

514

Empire Building project or that such joint venture owes it $11,000.00, or any other sum.

Hurwith and McFetridge were both stockholders and directors of the bank. The complaint alleges that Hurwith owns or controls a majority of the common stock, that he is chairman of its board of directors, chairman of its executive committee, and its principal executive officer, and that he personally dominates and controls the affairs of the bank; that Hurwith and the bank had for many years advised McFetridge with respect to banking and financial matters, and upon the request and advice of Hurwith, plaintiff had participated with him in several ventures as an investor; that plaintiff reposed confidence and trust in Hurwith as his financial adviser, and entrusted the management and supervision of their joint ventures to Hurwith; that the books and records of each venture were kept and maintained under his supervision; and that this relationship of trust and confidence existed between the parties at the time they entered into the joint venture for the acquisition of the Empire Building in Syracuse.

The complaint further alleges that about August 1, 1950, at Hurwith's initiative and recommendation, plaintiff entered into an oral arrangement for a joint venture between them for the purpose of purchasing and operating the Empire Building; that each party was to contribute equally the cash required to purchase this property and to share all profits and losses equally; that Hurwith was to manage the affairs of the joint venture and keep and maintain its books and records; that subsequently Hurwith informed plaintiff that he had made arrangements to purchase the Empire Building for $1,200,000.00, that $200,000.00 cash would be required, with the balance to be covered by a $1,000,000.00 mortgage, that he did not have sufficient ready cash available for his full share; that he suggested that each of them contribute $25,000.00 as

515

capital and that plaintiff lend the venture $150,000.00; and that Hurwith stated he would shortly take care of his share.

The purchase was consummated early in October 1950, and title was taken in the name of Funstonville Building Corporation, formed and then existing under the laws of the State of New York. Plaintiff and Hurwith each contributed the sum of $25,000.00, and it is alleged that plaintiff, as requested, lent the venture an additional sum of $150,000.00 to effectuate the purchase. The complaint further alleges that in December of 1953 the joint venture borrowed $90,000.00 from the Harris Trust and Savings Bank and $60,000.00 from the defendant bank; that the proceeds were used to pay a $150,000.00 loan from the City National Bank and Trust Company of Chicago to the Empire Building joint venture; that plaintiff and Hurwith both executed the $90,000.00 note to Harris Trust and Savings Bank; that Hurwith arranged for the $60,000.00 loan at the defendant bank; and that plaintiff signed the $60,000.00 note with the understanding that Hurwith would also sign it.

Additionally, it is alleged that Hurwith as manager of the joint venture made partial payments of principal and interest on the $60,000.00 loan out of funds of the Empire Building joint venture, the principal thereby being reduced to $11,000.00; that plaintiff was asked to and did sign renewal notes, the last of which was dated July 11, 1958 for $11,000.00; that Hurwith did not sign any of these notes but caused the defendant bank to retain the last note as the personal note of plaintiff even though Hurwith and the bank knew that such loan was not to be the personal loan of plaintiff but that of the Empire Building joint venture; that plaintiff did not personally receive the proceeds of the $60,000.00 loan, it having been obtained for and

516

used by the joint venture; that plaintiff never made any payments of either principal or interest on such note, and no demand therefor was made by the bank on plaintiff prior to July 1960; that in August 1960 Hurwith caused the defendant bank to obtain a judgment by confession on the $11,000.00 note, together with interest and attorneys' fees, in the Superior Court, and to file citation proceedings to discover assets against plaintiff and the American National Bank and Trust Company of Chicago; and that Hurwith and the defendant bank had knowledge of the fact that such loan was a loan of the joint venture, that the joint venture was heavily indebted to plaintiff, and that Hurwith was heavily indebted to the joint venture.

The First Commercial Bank is made a defendant only in count III which realleges by reference the paragraphs of count I, and adds in substance an allegation that the defendant bank, with full knowledge of the facts set forth in count I, has conspired with Hurwith in seeking to impose a liability of the joint venture on plaintiff personally, in violation of their fiduciary duties to plaintiff; that the bank, with knowledge that the loan was to the joint venture and not to plaintiff, failed to get the signature of Hurwith on such note and permitted the sale of bonds originally purchased from the proceeds of the City National Bank and Trust Company loan which was refinanced by the loans from the Harris Trust and the defendant bank, and the release of collateral for its loan, without requiring payment of the loan in full.

In count III plaintiff prays that the defendant bank be perpetually enjoined from enforcing the judgment obtained against him in the Superior Court, that pending the disposition of this suit the bank be enjoined from enforcing said judgment and prosecuting the citation proceedings to discover assets, and that Hurwith

517

be ordered and directed to pay the amount owing to defendant bank, for which payment he would receive credit in any partnership accounting.

The verified answer of the defendant bank avers that it had no dealings with the Empire Building joint venture, and that the joint venture does not owe it $11,000.00 or any other sum; that the joint venture did not borrow from the defendant bank $60,000.00, or any other sum, in December 1953, or at any other time; that McFetridge obtained an unsecured loan from the bank in that amount in December 1953 on presentation of his personal financial statement showing a net worth on December 1, 1953 of $487,950.00, signed a note for $60,000.00, and his personal account at the bank was credited with that sum; that the defendant bank does not know the purpose for which plaintiff used the proceeds of this loan; and that neither the certificates representing interest in the Empire Building nor anything else was pledged as collateral therefor, and the loan was not otherwise guaranteed or secured. It is further averred that plaintiff had paid the interest on the loan as it became due from time to time and had made payments of principal on the loan until it was reduced on March 31, 1956 to $11,000.00; that as the loan was reduced from time to time by payments, plaintiff gave renewal notes signed by him alone, the last of which was on July 11, 1958 for $11,000.00, and that payments of interest were made each month on his last note until April 8, 1959, but not thereafter. The bank's answer denies that it knew that the loan was not the personal loan of plaintiff but was the loan of the joint venture. It asserts that the $60,000.00 proceeds of the loan were withdrawn by plaintiff's personal check on December 10, 1953, that the bank had no knowledge of the records and affairs of the Empire Building and had no knowledge of the private dealings of McFetridge and Hur-

518

with, or of the financial obligations of one to the other. It further states that it filed its suit against plaintiff in the Superior Court by reason of his default on principal and interest on the $11,000.00 loan, at its own instance procured a judgment against plaintiff by reason of the default, and then took appropriate steps to collect the judgment. The bank denies that it conspired with Hurwith to impose a liability of the joint venture on plaintiff, denies that it stood in a fiduciary relationship to plaintiff at any time, and denies that it ever had bonds or other securities as collateral for the $60,000.00 loan. It avers that at the time the loan was made McFetridge was one of the directors of the bank and charged with knowledge that the unsecured loan was made to him; that he received the proceeds of the loan; that he withdrew the proceeds by his personal check; and that the bank had no knowledge of the dealings of the joint venture or of McFetridge and Hurwith with the Harris Trust.

By way of reply plaintiff alleges that the bank's answer is not verified in good faith because it was not verified by Hurwith, the official of the bank having full knowledge of the facts alleged in the complaint; that when the $150,000.00 loan of the joint venture from the City National Bank was refinanced in December 1953 by a $90,000.00 loan from Harris Trust and a $60,000.00 loan from defendant bank, collateral was deposited with the Harris Trust to secure the loans made by both banks, and thereafter defendant bank notified the Harris Trust that defendant bank released the collateral with respect to the loan made by the defendant bank, without the knowledge of plaintiff; that plaintiff has no recollection of the procedure followed with respect to the $60,000.00 loan by defendant bank, but that he followed the procedure recommended by defendants, imposing full confidence in them as his financial advisers.

519

■ ■ The motion to dissolve the temporary injunction sets forth various grounds. It is first urged that the complaint alleges no basis for granting injunctive relief, since it shows that plaintiff has a complete and adequate remedy at law, by moving to open the judgment obtained by confession in the presently pending Superior Court suit. Counsel point out that rule 23 of the Illinois Supreme Court Rules (Ill. Rev. Stat. 1959, ch. 110, § 101.23) specifically provides for this type of procedure, and they argue that complete and adequate relief can be granted to plaintiff in that case by opening the judgment there obtained and affording plaintiff the opportunity to present the contentions which he alleges in this suit by way of defense in that proceeding. Defendant relies on the rule that a court of equity will not interfere with a judgment at law obtained by confession or otherwise in the absence of fraud or collusion in the obtaining of the judgment, and cites Hollister v. Sobra, 264 Ill. 535, 106 N. E. 507 (1914), a leading case in this State. The defendant there had obtained a judgment in an action at law against plaintiff on his note. Subsequently, before defendant had been successful in collecting the judgment in full, plaintiff learned that representations made by defendant at the time plaintiff signed the note sued on were false and fraudulent, and he sued to enjoin further proceedings to collect the judgment. The Supreme Court affirmed the trial court in holding that the bill for injunction should be dismissed for want of equity because the plaintiff should have learned the facts and should have presented them by way of defense in the action on the note, and said (p. 543): "There is no allegation of fraud in connection with the assumpsit suit which resulted in the judgment. The rule is well established that the fraud for which a judgment may be enjoined in equity must be in the procurement of the judgment. If there be fraud entering into

520

the cause of action which vitiates it, that is a defense which must be interposed in the action at law unless the party has been prevented from interposing the defense by fraud. (Freeman on Judgments, sec. 489.) . . . Appellant has no standing in a court of equity for relief against this judgment, first, because, if the facts existed as stated in his bill, it was his duty to present them as a defense to the action at law unless he was prevented from doing so by some accident, fraud or mistake for which he was in no way responsible; and second, the allegations of fraud do not seek to impeach the law proceeding which resulted in the judgment. These general principles are sustained by Kretschmar v. Ruprecht, 230 Ill. 492, and cases there cited. There was no error in dismissing appellant's bill."

Again, in Kahn v. Rasof, 253 Ill. App. 546 (1929), the court applied this rule to an action to enjoin a judgment obtained by confession on a note. The court stated that the allegations presented in a bill in equity to enjoin collection of a judgment obtained by confession should have been presented in an appropriate motion to vacate the proceedings in which the judgment was obtained. See also the later decisions of Freehill v. Gorny, 347 Ill. App. 316, 106 N.E.2d 767 (Abst. 1952), and Mohr v. Messick, 322 Ill. App. 56, 53 N.E.2d 743 (1944), in which the court refused to enjoin collection of judgments on notes on the ground that the proper way of proceeding was to open up or vacate the confession judgment.

Plaintiff seeks to excuse his failure to move at law to vacate the confession judgment by arguing that his relief was not as complete as that afforded by a court of equity, and in support of this contention he alleges various equitable defenses against the note. However, in its verified answer the bank denies all except one of these defenses; it denies that it was guilty of fraud, that it stood in a fiduciary relation to plaintiff, that it

conspired in any respect with Hurwith, that it released any collateral for plaintiff's loan, or that it had knowledge of or acquiesced in any diversion of bond proceeds from the alleged joint fund. As to the sixth defense, i.e., that Hurwith failed to sign the note as co-maker, defendant averred that it made an unsecured loan to plaintiff personally, and that it had no knowledge of the purpose for which plaintiff used the proceeds, that plaintiff was a director of the bank, and charged with knowledge of the unsecured loan made to him, that plaintiff individually had made payments of principal and interest on the note and had signed renewal notes from time to time. It appears to us that all plaintiff's alleged defenses could have been raised at law in a motion to vacate the judgment. Rule 23 of the Illinois Supreme Court Rules provides that a judgment by confession shall be opened if the defendant has a defense on the merits to plaintiff's demand. After a judgment is opened defendant may plead in that action a counterclaim stating either a legal or an equitable cause of action (Ill. Rev. Stat. 1959, ch. 110, §§ 38 and 44), and it has been expressly held that section 38 of the act authorizes the bringing in of new parties as crossdefendants to a counterclaim. Johnson v. Moon, 3 Ill.2d 561, 568, 121 N.E.2d 774 (1954). Under this holding plaintiff was at liberty to present his defenses in a motion to vacate the confession judgment, and if it had been opened up, to include Hurwith as an additional party. This would have given plaintiff a complete remedy. Plaintiff cites Printers Corp. v. Hamilton Inv. Co., 295 Ill. App. 34, 13 N.E.2d 517 (1938), in support of his contention that his remedy at law was not as complete and adequate as that afforded by a court of chancery. In the Printers Corp. case, after plaintiffs' motion to vacate the judgment of confession was denied, they brought suit in equity, after having established that their remedy at law was inadequate. No such procedure was followed in the in-

stant proceeding. The only other case cited by plaintiff, Mayr v. Chesman & Co., 195 Ill. App. 587 (1915), involved an injunction restraining further prosecution of a pending case. Unlike the present proceeding, the complaint there contained undenied allegations of fact showing fraud. Moreover, when that case was decided more than forty-five years ago, the present liberalized practice which permits the joinder of legal and equitable causes of action and the addition of new parties on the counterclaim had not been adopted.

It is urged by the bank that in order to obtain a preliminary injunction plaintiff was required to show a probability of ultimate success and to establish a clear and affirmative right to relief. It should be noted that the bank was served with a copy of the complaint in this proceeding and notice for temporary injunction at 4:00 p.m. Thursday, August 11, 1960, and the motion was presented to the chancellor the next morning at ten, presumably before defendant had an opportunity to review the allegations and file its answer. No evidence of any kind was presented to the court at the hearing for the temporary injunction. The order was issued solely on the basis of plaintiff's verified complaint. After the bank filed its verified answer denying the material allegations of the complaint as they relate to the defendant bank and set up defenses, it filed and presented its motion to dissolve. In the recent case of Lipkin v. Burnstine, 18 Ill.App.2d 509, 152 N.E.2d 745 (1958), the court said (pp. 517–518) : "Plaintiff was required to establish that he was probably entitled to succeed ultimately on the merits as a prerequisite to obtaining a preliminary injunction. [Citing cases.] The injunction was granted on the pleadings. In the answer the defendants denied the material averments of the complaint and set up complete defenses. . . . No evidence was offered and no affidavits were presented. A temporary injunction cannot be predicated solely upon the pleadings where

523

the material factual issues are controverted and the answer raises a complete defense. [Citing a number of Illinois decisions.]" See also Triangle Sign Co. v. Randolph & State Property, Inc., 16 Ill.App.2d 21, 29–30, 147 N.E.2d 451 (1957).

■ ■ It is a well settled rule that a prerequisite to the exercise of the extraordinary relief of injunctive remedy is the showing of irreparable harm to the plaintiff if such relief is not granted. In the Triangle Sign Co. case this doctrine was fully discussed and reaffirmed. We find no factual allegations in the complaint or even any ultimate conclusion in the pleading that plaintiff will suffer irreparable injury if the injunctive relief is denied. Plaintiff's counsel argue that the granting or withholding of a temporary injunction before answer rests in the sound discretion of the chancellor; that the primary purpose of a temporary injunction is to preserve the status quo pending a hearing on the merits; that a temporary injunction will be granted before the answer is filed to preserve the status quo if the complaint, prima facie, states a cause of action; and that a temporary injunction will be granted or continued to preserve the status quo where less harm will result from such action if the enjoined party ultimately prevails than would accrue to the plaintiff if the injunction is denied and he ultimately prevails. Cases relied on by plaintiff in support of these various propositions (Scholz v. Barbee, 344 Ill. App. 630, 101 N.E.2d 845 (1951), County of Cook v. Yacktman, 25 Ill.App.2d 448, 166 N.E.2d 466 (Abst. 1960), Gillam v. 661 Sheridan Apartments, Inc., 1 Ill. App.2d 11, 116 N.E.2d 91 (1953)) do not appear to us to state this rule; they go no further than to hold that where equitable grounds exist and a prima facie case is made by the complaint, the issuance of an injunction is within the sound discretion of the chancellor. The argument that the chancellor should weigh the relative harm that will be suffered by the parties if the tempo-

rary injunction is granted or denied is not relevant unless and until some ground for equitable relief is established. In Rago v. Village of Melrose Park, 161 Ill. App. 18 (1911), relied on by plaintiff, the court expressly held that the injunction was properly issued to prevent a threatened multiplicity of suits.

■ ■ It is suggested that the chancellor evidently refused to give credence to defendant's verified answer. He was not bound to accept the answer as true, but where the answer controverts the allegations of the complaint the chancellor is not free to reject either pleading in deciding whether to dissolve the injunction. He is not permitted to weigh the pleadings and determine their credibility. Moss v. Balch, 320 Ill. App. 135, 49 N.E.2d 801 (Abst. 1943); Ill. Rev. Stat. 1959, ch. 69, §§ 15–16. It must be conceded that plaintiff, not defendant, had the burden of establishing the probability of ultimate success and a clear and an affirmative right to relief. Therefore, after defendant's verified answer was filed denying the material allegations of the complaint it was necessary that evidence be adduced to resolve the issues. Kuhl v. Clark, 261 Ill. App. 491 (1931), cited by plaintiff, is not in point since in that case both parties offered evidence, and the refusal of the court to dissolve the injunction was based upon the weighing of this evidence.

For the reasons indicated we have concluded that the temporary injunction order and the order denying defendant's motion to dissolve, should be reversed, and it is so ordered.

Temporary injunction order and order denying defendant's motion to dissolve, reversed.

BRYANT, J., concurs.

BURKE, P. J., took no part.