Capitol Records, Inc., Plaintiff-Appellee, v. Vee Jay
Records, Inc., Defendant-Appellant.

Gen. No. 49,470.

First District, Second Division.
March 19, 1964.
Rehearing denied April 7, 1964.

Sidley, Austin, Burgess & Smith, of Chicago (Robert A. Downing and Clarence F. Wittenstrom, Jr., of counsel), for appellant.

Arvey, Hodes & Mantynband, of Chicago (Sidney R. Zatz and Richard J. Troy, of counsel), for appellee.

MR. JUSTICE BRYANT delivered the opinion of the court:

This is an interlocutory appeal from an order entered on January 15, 1964, granting a temporary injunction "restraining and enjoining until further order of the court, the defendant, Vee Jay Records, Inc., its agents, attorneys and servants from manufacturing, selling, distributing or otherwise disposing of or advertising the sale by it, its agents, attorneys and servants of any and all recordings by the vocal group commonly referred to as the 'Beatles' "; and from an order entered on January 30, 1964, denying the petition of defendant. Vee Jay Records, Inc., to dissolve the temporary injunction issued on January 15, 1964. Subsequent to the last mentioned order this court entered an order on February 5, 1964, staying the force

and effect of the injunction pending argument of the appeal from the denial of the motion to dissolve.

Before proceeding further, we will indicate the disposition of this appeal. We believe that the order granting the temporary injunction was properly issued and should be affirmed. We believe that the order denying the motion to dissolve the injunction should be reversed and is now left undisposed of. We are also vacating our own order staying the force and effect of the injunction.

Before reasoning the above conclusions, a chronological background of the procedure is in order. On January 13, 1964, Capitol Records, plaintiff herein, presented its verified complaint for injunction followed on January 14 by a motion to the court for a temporary injunction. The defendant, Vee Jay Records, for various reasons, was given until January 15th to file an answer. On January 15th, defendant appeared with a motion entitled "motion to strike" which alleged a valid existing contract between Vee Jay Records and defendant, Transglobal Music Co., Inc., and which motion incorporated by reference the complaint in a certain cause of action filed in the Supreme Court of New York, entitled Vee Jay Records, Inc. v. Capitol Records, Inc., Swan Records, Inc. and Transglobal Music Co., Inc. This complaint was accompanied by an affidavit of Jay Lasker, Vice-President of Vee Jay Records, which may or may not have been verified. On January 15, upon petition of plaintiff, Transglobal Music Co., Inc. was added as a party defendant. On that same day Transglobal filed its answer admitting all the allegations in the plaintiff's complaint except that which pertained to the financial condition of defendant, Vee Jay Records.*

---

* It is no secret that both Transglobal and Capitol are owned by EMI (Electric Musical Industries, Ltd.) which in turn exclusively controlled the "Beatles." It is, thus, not surprising that Transglobal might so quickly respond.

470

On January 15, the court ordered: (1) that the "motion to strike filed by Vee Jay Records, Inc., defendant, is overruled and denied, and said defendant is ordered to answer said plaintiff's complaint within thirty days"; and (2) that Vee Jay Records be enjoined until further order of the court.

On January 23, defendant petitioned for a substitution of attorneys and the court so ordered. On the same day a verified answer was filed for Vee Jay Records controverting the allegations in Capitol's original complaint. Along with this, a petition to dissolve the injunction was presented alleging that the original verification on behalf of Capitol Records was faulty inasmuch as the person verifying "could not have knowledge of the facts alleged therein, particularly those facts regarding the relationship between defendants, Vee Jay Records, Inc. and Transglobal Music Co., Inc."

On January 30, the court ordered that the petition of Vee Jay Records to dissolve the temporary injunction be denied without holding a hearing on the motion. This appeal followed and we granted a stay because no hearing had been held prior to ruling on the motion to dissolve the temporary injunction, although the question was referred to a master on a general referral.

The questions which we are presented with, again in chronological order are: (1) whether the complaint of Capitol Records was properly verified; (2) whether the motion made by Vee Jay, entitled "Motion to Strike" should be considered a motion to strike or an answer; (3) whether the temporary injunction was properly issued; (4) whether the motion to dissolve was properly denied.

Although to date there has never been any kind of hearing as to the merits it is important to note that both Capitol Records and Vee Jay Records claim that each has a superior right to manufacture and sell "Beatles" records in the United States. Although

471

prior to this suit there was only one duplication in recordings between the parties, each party alleges that it has expended considerable funds to promote the "Beatles" in the United States and that the other party is unfairly reaping the benefits of these expenditures.

The rights of Vee Jay Records stem from a contract entered into in January, 1963, allowing it an exclusive license to manufacture and sell "Beatles" recordings in the United States under certain conditions for five years. This contract was entered into with Transglobal which in turn secured its rights from EMI. There are allegations that the Vee Jay contract was terminated because of failure to make statements of sales and failure to pay royalties. There are certain rights to four recordings which Vee Jay may possess following termination, but there are allegations that these rights, if they exist, do not extend to thirteen other songs which presently appear on an LP being marketed by Vee Jay.* Capitol, on the other hand, secured its rights directly from EMI following the alleged termination of Vee Jay's contract rights.

The status quo to be maintained prior to these proceedings is difficult to ascertain in the absence of any proceedings going to the merits. For the purpose of this appeal, however, the situation as set forth in

---

* The four recordings to which Vee Jay Records may have a right to continue producing after termination until February, 1964, at least without having had a construction of the contract, are: "Please, Please Me," "Ask Me Why," "From Me to You," and "Thank You, Girl." The main controversy centers around Vee Jay's LP, "Introducing the Beatles" which Capitol alleges was not produced at all until just prior to the present action and which appears to be selling in competition with or as substitution for Capitol's LP "Meet the Beatles."

472

Capitol's verified complaint must be accepted. This status quo contemplates a situation where the Vee Jay rights have been terminated with no rights to the four recordings overlapping and Capitol Records alone having the right to manufacture and sell "Beatles" recordings in the United States.

■ The first point raised by Vee Jay is that the complaint of Capitol Records is not verified because the affidavit of Robert E. Carp, secretary of Capitol, although stated to be within his own knowledge, is actually a verification on information and belief.

Mr. Carp's verification went to the relationship between Transglobal and Vee Jay. We believe that there is no basis to this objection. The motion entitled "Motion to Strike" made no mention of this and, indeed, stated just the opposite that: "Capitol Records, Inc. and Transglobal Music Co., Inc. are owned by Electrical and Musical Industries, Ltd., and as such, had full knowledge of the existing contract between Transglobal and defendant and all information pertinent thereto." The rule applicable in this situation was stated in City of Chicago v. Larson, 31 Ill App2d 450, 453, 176 NE2d 675 (1961):

> ". . . where the facts are of necessity within the defendant's knowledge and not within the plaintiff's knowledge, but are stated by the plaintiff to be true, a complaint is not perforce defective. 21 ILP Injunctions, sec 162."

In Weingart v. Weingart, 23 Ill App2d 154, 164–165, 161 NE2d 714 (1959) and Callahan v. Holsman, 351 Ill App 1, 4, 113 NE2d 483 (1953) the requirement was pointed out to be "a highly technical principle" and a "snare and pitfall for the unwary member of the profession." Both cases relied upon Mr. Justice Bristow in Karlock v. New York Cent. R. Co., 333 Ill

App 655, 78 NE2d 122 (1948) in which he quoted Mr. Justice Cardozo:

"The law has outgrown its primitive state of formalism when the precise word was the sovereign talisman, and every slip was fatal."

We believe, absent any evidence to the contrary, that Mr. Carp knew of the facts sworn to and that his affidavit was properly verified.

■ Vee Jay has taken the position that the motion entitled "Motion to Strike" should be treated as an answer since it controverts facts presented in the complaint. There is no doubt that this motion was in peculiar form. It was entitled "Motion to Strike" but the body of the motion began in the form of an answer. There was an allegation that Vee Jay had an existing contract right and the New York complaint and affidavit were incorporated by reference. There was no verification of the motion.

Vee Jay's position is difficult to maintain since its former attorney clearly intended his motion to be a motion to strike. Moreover he argued only on points of law in support of his motion to strike:

"Mr. Strayhorn: Just one further step, your Honor. Counsel made reference to the fact that I, as attorney, was procrastinating, using dilatory tactics, and that my motion to strike was in that nature. I would only point out to the court that my motion to strike merely asserts the position that I took the first time I appeared in this court, which was two days ago, attacking the right of Capitol to be here as a party plaintiff in this action. I have merely made note of that in my motion to strike.

"Now, on the question of the motion to strike, the court must rule on that motion to strike. If the court rules in my favor or in our favor, then

it is of no necessity for us to answer the complaint.

"Now, if the court rules against us, then of course, we must—because there are issues of fact that have not been reached here by the pleadings and by the statement of counsel to this court. . . ."

Although present counsel might not have made a motion to strike at the time Mr. Strayhorn presented his, he is bound by prior counsel's actions, as he himself knew he was when he filed an answer on January 23.

Taking another viewpoint, the complaint in the instant case was verified. Section 35 of the Civil Practice Act (Ill Rev Stats c 110, § 35) requires that if any pleading is verified every subsequent pleading must also be verified unless verification is excused. Here, Capitol's complaint was verified, but, Vee Jay's motion to strike was not, even if it could otherwise be considered an answer. For this reason it would have to be disregarded as an answer.

Clearly the motion to strike contains matters extraneous to that motion and to a certain extent controverting the allegations of the complaint. The law of Illinois is clear, however, that the court could not consider those elements in the motion to strike which were inconsistent with that motion. The motion to strike objecting to a pleading and asking for a dismissal (Ill Rev Stats c 110, § 45) presents a question of law. The court in Dunne v. County of Rock Island, 273 Ill 53, 57, 112 NE 342 (1916) set down the rule:

". . . For the same reason that affidavits are not received on motion to dissolve an injunction before answering or pleading to the bill, we hold that they should not be filed or considered on a motion for a preliminary injunction in any case. It is the office of an answer to deny the allegations of a bill in equity or to set up some affirma-

tive matter as a defense, and it is the office of a demurrer to test the sufficiency of a bill upon its face. Issues of fact should be made up before any evidence is heard, and if only questions of law are to be raised, the bill should be taken as true as to all facts well pleaded and as stating the whole case for the court's consideration until the facts are denied by answer or further facts are pleaded by the defendant as matters of defense to the bill."

and on page 58:

". . . In such cases, however, only the matters stated in the bill and all matters that are offered or that might be offered by amendment to the bill to make a good bill of complaint are to be considered in deciding the case against the complainant, and affidavits of matters extraneous to the bill or in denial of the facts stated in the bill can not be considered by the trial court or the reviewing court. Evidence should be heard on the final disposition of the case only when the issues of fact are made by answer or plea.

"It follows from what has already been said in this opinion that the court erred in considering the affidavits and plans filed by appellee in determining the question, in the first instance, whether or not a temporary injunction should issue, in the absence of any plea or answer filed by appellee. The court also erred in dismissing appellant's bill and in considering appellee's affidavits and plans on motion to dismiss the bill. Appellee not having filed any answer or plea, the question whether or not a temporary injunction should have issued should have been determined solely upon the sufficiency of the bill of complaint, . . ."

476

See also H. K. H. Development Corp. v. Metropolitan Sanitary Dist., 47 Ill App2d 46, 196 NE2d 494; Goldblatt Bros. v. Sixty-Third & Halsted Realty Co., 338 Ill App 543, 545, 88 NE2d 100 (1949).

We believe that here the lower court properly considered the motion a "motion to strike," properly disregarded any fact controversion set up in the body of the motion and the incorporated New York complaint, properly disregarded the affidavit of Jay Lasker, and properly entered the temporary injunction.

■ ■ An applicant for a temporary injunction is not required to make out a case which will entitle him at all events to ultimate relief, but need only raise a fair question of the existence of the right he claims. Weingart v. Weingart (supra at 158); Nestor Johnson Mfg. Co. v. Goldblatt, 371 Ill 570, 574, 21 NE 2d 723 (1939); Baird v. Community High School Dist. No. 168, 304 Ill 526, 529, 126 NE 671 (1922); McDougall Co. v. Woods, 247 Ill App 170, 174 (1928). In considering the motion to strike, the allegations of fact in the complaint had to be taken as true. The court has a large discretion in the granting of a temporary injunction and unless that discretion has been abused the injunction will not be disturbed. Aurora v. Warner Bros. Pictures Distributing Corp., 16 Ill App2d 273, 285, 147 NE2d 694 (1958); Weingart v. Weingart (supra at 158); Bowman Shoe Co. v. Bowman, 21 Ill App2d 423, 440, 158 NE2d 112 (1959). The record before us does not show an abuse of discretion by the chancellor. The defendant was given an opportunity to file an answer. It chose instead to file a motion to strike. We think that the temporary injunction maintained the last actual peaceable, uncontested, status quo which preceded the controversy as contemplated by Capitol Records' com-

477

plaint. We must hold this absent any kind of hearing establishing another status quo. Quinn v. Fountain Inn, 218 Ill App 260 (1920); Deisenroth v. Dodge, 350 Ill App 20, 111 NE2d 575 (1953); Baldassano v. Accettura, 336 Ill App 445, 84 NE2d 336 (1949).

██ The last point on which it is alleged that the temporary injunction was improperly granted, and the basis for the motion to strike, is that Capitol Records' rights to the "Beatles" stem from its contract with EMI that contract or a copy thereof must be attached to its complaint for injunction. Capitol states that it is not suing upon its contract with EMI, but is seeking to protect the rights it has in the "Beatles" which Vee Jay has violated. The agreement of Capitol with EMI is a matter of evidence only to justify the rights which Capitol seeks to protect. Section 36 of the Civil Practice Act (Ill Rev Stats c 110, § 36) requires that if a claim is founded upon a written instrument, a copy thereof, must be attached to the pleading. The case of Simpkins v. Maras, 17 Ill App2d 238, 149 NE2d 430 (1958), where a similar charge was made in reference to a lease of mineral rights, made the distinction urged by Capitol Records. The court there said at 244–245:

> ". . . The rights of the plaintiff and the rights of the defendants as to ownership are evidentiary in character, and while each must be established, the basis of the suit is the refusal of the defendants to permit the drilling for oil and access on and over the surface of the land to do such drilling."

We do not believe that the complaint of Capitol Records was founded upon its contract with EMI within the provisions of section 36, so that a copy must necessarily have been attached.

██ ██ The most substantial point presented upon this appeal concerns the action of the court in denying

478

■■■■■■■■■■■■■■■■■■■■■

the motion to dissolve the temporary injunction on January 30, without holding a hearing on the motion. Section 16 of the Injunction Act (Ill Rev Stats c 69, § 16) provides:

"Upon a motion to dissolve an injunction after answer, the court shall not be bound to take the answer as absolutely true, but shall decide the motion upon the weight of the testimony."

On January 23, Vee Jay submitted its answer and its motion to dissolve the temporary injunction to the court. A study of the proceedings show that the court was familiar with section 16, realized that the answer of Vee Jay presented controverted questions of fact and sought to set a hearing on the motion. Counsel for Vee Jay took the position that the court must rule on the motion to dissolve as a matter of law. His position was that his answer presented questions of fact and that as soon as these were presented the court must dissolve the injunction pending hearing. For this proposition he relied upon McFetridge v. First Commercial Bank, 28 Ill App2d 512, 171 NE2d 791 (1961). That case does not support counsel's view. What counsel overlooked in his argument on the law is that contrary to the McFetridge case the temporary injunction had already *properly* been issued. Unlike the McFetridge case counsel here had ample opportunity to answer the complaint but chose instead to make a motion to strike, and in the McFetridge case a hearing was held prior to the time the motion to dissolve was ruled on but the defendant declined to present any evidence. In this situation section 16 requires that the injunction remain in force until following the hearing on the motion to dissolve.

Capitol Records alleged that they demanded a hearing upon that day prior to a ruling on the motion to dissolve, but their protestations became weaker when the court denied the motion to dissolve and referred

the matter to a master on a general reference. This order had the effect of denying both parties their right to a preliminary hearing under section 16. When this court then allowed a stay of the force and effect of the injunction because a preliminary hearing under section 16 had not been given, it was the plaintiff, Capitol Records, who suffered.

Perhaps, this points up the difficulty with this case: time is of extreme importance. The "Beatles" are a transitory factor. At all times in this case when the injunction has been in effect, Capitol has been content to take a leisurely approach to proceedings, of course, while the injunction has been stayed Vee Jay has been plagued by sickness and trips out of town. The court in these cases should not refer a hearing on a motion to dissolve to a master. The law only requires a preliminary hearing and the interests of both parties demand an immediate hearing by the court. A bond is of little protection in a case such as this. The damages are completely speculative and incalculable. Here, these companies are not producing the same recordings at all. If Vee Jay should win on the merits of this proceeding how could they ascertain damages from Capitol for selling recordings which were produced on masters that Vee Jay might never have secured even though they might be the sole licensee. We believe that the court should hold these preliminary proceedings immediately without reference.

The court here was induced to commit error in dissolving the injunction without a hearing by the erroneous position of Vee Jay that it rule as a matter of law. We adhere to our position that the court erred on this ruling and the order of January 30, denying the motion to dissolve, is reversed, leaving the motion undisposed of before the lower court. Our order of February 5, granting Vee Jay's motion to stay the force and effect of the injunction is vacated.

Order of January 15, affirmed, order of January 30, reversed, order of February 5, vacated.

BURKE, P. J., concurs.

FRIEND, J., dissenting:
This is an interlocutory appeal from two orders: one granting a temporary injunction, the second denying defendant's motion to dissolve it.

I think the temporary injunction was improvidently granted because it violated the established rules pertaining to the issuance of temporary restraining orders and failed to maintain the status quo which is one of the principal functions and limitations of this extraordinary remedy.

At the time the injunction was granted, Vee Jay had on file a pleading which controverted the material allegations of the complaint. It was captioned "Motion to Strike," and the chancellor, so regarding it, took all the allegations of the complaint as true and disregarded the controverted material allegations in the pleading. The pivotal issue of fact upon which this entire controversy rests is whether Vee Jay's contract to make, advertise, and distribute Beatle records in the United States is paramount to that of Capitol. The affidavit of Jay Lasker, vice president of Vee Jay Records, subscribed and sworn to, sets forth in detail the factual controversy between the parties. It is undisputed that Vee Jay's contract with Transglobal to make and distribute the Beatle records in the United States dates back to January 10, 1963. This contract gave Vee Jay exclusive rights for a period of five years; Capitol did not come into the picture until some nine months later. It contends that Vee Jay's contract was terminated and that plaintiff's rights to make and distribute Beatle records succeeded those of Vee Jay. Transglobal claimed that the contract between it and Vee Jay had been terminated, alleg-

ing that Vee Jay had not made payments of royalties for the records sold. In his affidavit Lasker denies this allegation of the complaint, and alleges that Vee Jay made payments to Transglobal and that such royalties were accepted by it; that some of the royalties were paid directly to Transglobal's licensor Electric and Musical Industries, Ltd. (EMI), for the reason that EMI claimed that Transglobal was not its representative and directed that all payments be made directly to EMI; that for many months following this situation correspondence between Vee Jay, Transglobal, and EMI continued in an attempt to adjust the internal conflict of Transglobal with its licensor EMI; and that during such period of time Vee Jay attempted to continue arrangements with Transglobal but that Transglobal refused to comply with the contract in existence. This highly controverted pivotal question of fact should have been resolved before a temporary injunction was issued, and in view of the sworn denial of the material allegations of Capitol's complaint, plaintiff had the burden of proving its alleged claim to the right of distribution of the Beatle records as against Vee Jay's claim, and of establishing the probability of ultimate success and a clear and an affirmative right to relief. McFetridge v. First Commercial Bank, 28 Ill App2d 512, 171 NE2d 791 (1961).

The difficulty arose over the function of the pleading filed by Vee Jay designated as "Motion to Strike"; the chancellor treated it as such and completely disregarded the verified affidavit of Lasker which was incorporated in and made a part of the motion, and to all intents and purposes served as an answer to make up issues of fact which should have been heard before any injunction was issued. Here again the McFetridge case is in point, as is Lipkin v. Burnstine, 18 Ill App2d 509, 152 NE2d 745 (1958). In other words, this so-called "Motion to Strike" con-

482

tains sworn allegations of fact which could have defeated Capitol's allegations had Vee Jay's pleading been called an answer. The courts of this state have repeatedly recognized the provisions of subsection (3) of section 33 of the Civil Practice Act (Ill Rev Stats 1963, c 110, § 33) that "pleadings shall be liberally construed with a view to doing substantial justice between the parties" (Crosby v. Weil, 382 Ill 538, 48 NE2d 386 (1943); Wohl v. Yelen, 22 Ill App2d 455, 161 NE2d 339 (1959); Burr v. State Bank, 344 Ill App 332, 100 NE2d 773 (1951)), as well as of subsection (2) of section 42 of the Civil Practice Act (§ 42) that "no pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he is called upon to meet." And the rule is well recognized in Illinois that equity should look to the substance of the pleading rather than to the form. Grove v. Chicago Title & Trust Co., 25 Ill App2d 402, 166 NE2d 630 (1960); Evangelical Slovak Women's Union v. Papanek, 8 Ill App2d 298, 132 NE2d 20 (1956); Barrett v. Continental Illinois Nat. Bank & Trust Co., 2 Ill App2d 70, 118 NE2d 631 (1954). It seems to me that the substance and wording of Vee Jay's pleading, its motion to strike, joined the issues in that it raised specific defenses, controverted the material issues of fact alleged in the complaint, and factually questioned whether Capitol was entitled to the relief sought on the merits. The pleading begins by stating: "Defendant, . . . answering the complaint. . . ." This opening, plus the fact that the motion itself contained only affirmative allegations of fact and attached as exhibits copies of the verified complaint and affidavit filed in New York, should have put the chancellor and Capitol on notice as to the substance of the pleading. If this procedure had been employed, as it should have been, there could have been no tem-

porary injunction without a hearing and a determination of the facts. The Barrett case is in point on this issue; we said there (76) : "We think the liberal spirit of the Practice Act justifies the conclusion we are about to draw. The Act provides that pleadings shall be liberally construed with a view to substantial justice . . . ." In that case the court concluded (77) that it was "required" to treat the plaintiff's motion as a reply. The parties here have now been in litigation for more than two months—since January 13, 1964—and all this subsequent review litigation could have been averted if the established rule of procedure on the merits of this case had been followed. A hearing and determination of the controverted issues of fact could have been had within a comparatively short time. I think the chancellor erred in granting the temporary injunction, and on this interlocutory appeal that order should have been reversed.

After defendant filed a sworn answer to the complaint and after the temporary injunction was issued, the case was set on defendant's motion to dissolve the injunction, but still no hearing was had, and the motion to dissolve was denied, after which the case was referred to a master under a general reference to be heard on the merits—and there it now rests.

Capitol's counsel argue, and the majority opinion adopts the view, that the temporary injunction "maintained the last actual, peaceable, uncontested, status quo which preceded the controversy as contemplated by Capitol Records' complaint." This theory, melodiously phrased in an attempt to assuage the result of the rejection of Vee Jay's rights in this controversy without a hearing, is in my opinion not applicable to this proceeding. The effect of the temporary injunction is to take all the allegations in Capitol's complaint as true and grant it substantially all the relief that it could have had on a final determination of the case, if it should prevail in its claim as to the

facts, without a hearing and without requiring Capitol to demonstrate by the evidence the probability of ultimate success and a clear and an affirmative right to the relief sought, and at the same time bypassing or disregarding Vee Jay's version of the facts, and without any hearing as to the facts denying its right to make and distribute the Beatle records in the United States under a five-year contract obtained long before Capitol came into the picture, the termination of which Vee Jay denied specifically and at length in Lasker's affidavit.

The established rule with respect to temporary injunctions is reiterated and set forth in the recent opinion of this division in the Lipkin case, as follows (517–18):

> "Plaintiff was required to establish that he was probably entitled to succeed ultimately on the merits as a prerequisite to obtaining a preliminary injunction. [Citing cases.] The injunction was granted on the pleadings. In the answer the defendants denied the material averments of the complaint and set up complete defenses. Also before the court was the verified petition for a temporary injunction, the factual allegations of which repeated the allegations of the complaint. No evidence was offered and no affidavits were presented. A temporary injunction cannot be predicated solely upon the pleadings where the material factual issues are controverted and the answer raises a complete defense. [Citing cases.]"

After the temporary injunction had been issued and the court had denied defendant's motion to dissolve it, we heard arguments aggregating some three hours on defendant's motion to stay the force and effect of the injunction and entered such an order. The status quo in this proceeding is maintained not by the temporary injunction granted by the chancellor but by the

485

stay order entered by this court on February 5, 1964 after these protracted arguments. Since, as I view the status of this case, the temporary injunction does not maintain the status quo, the only equitable arangement at this juncture would be to permit both Vee Jay and Capitol to manufacture and sell the Beatle records. Such status should persist until material issues of fact can be determined on evidence presented before the chancellor. To hold otherwise and continue the temporary injunction in full force and effect pending the ultimate outcome of this case is to penalize defendant, since it would be difficult, if not impossible, for Vee Jay, if it should be successful in this litigation, to show damages by ultimately proving the number of records it could have sold if it had not been enjoined from doing so. As this matter has been handled, Vee Jay still has not been heard as to the pivotal facts which make up the determining issues; its rights have been adversely decided without a hearing—and this, I think, amounts to a denial of justice.

If the order granting the temporary injunction is not to be reversed, as the majority of this division hold, I certainly think that the stay order, which they have vacated, should remain in full force and effect.

The majority hold that the order denying defendant's motion to dissolve the injunction should be reversed and "is now left undisposed of." I am not clear as to what this means, but in the light of what has been said in this dissent I think there should be no qualification; the order denying the motion to dissolve should have been reversed.