George H. Scholz, Augusta Scholz, Frances Alexander, Martin Bretthauer and Henrietta M. Bretthauer, Plaintiffs-Appellees, v. Joseph W. Barbee and Merle Jane Barbee, Defendants-Appellants.

Gen. No. 10,532.

Opinion filed November 17, 1951. Released for publication December 5, 1951.

SIMPSON & SIMPSON, of Aurora, for appellants; J. P. SIMPSON, of Aurora, of counsel.

PUTNAM, JOHNSON & ALSCHULER, EDWARDS & BRUNNE-MEYER, and JOSEPH J. FELDOTT, all of Aurora, for ap-

▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬

pellees; JOSEPH J. FELDOTT, and SAM ALSCHULER, both of Aurora, of counsel.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This case comes to this court on an interlocutory appeal by the appellants from an order entered by the city court of Aurora, Illinois. The verified complaint asks for an injunction. There was no evidence heard, and as the rights of the parties depend on the sufficiency of the complaint, it will be necessary to analyze it to determine the rights of the respective parties. The complaint in substance charges that the plaintiffs George H. Scholz and Augusta Scholz, his wife, own an undivided one-third interest as joint tenants in the real estate described in the complaint. This real estate consists of a three-flat building. The plaintiff, Frances Alexander, likewise owns an undivided one-third interest in the premises, subject to certain interests therein of the plaintiffs, Martin Bretthauer and Henrietta M. Bretthauer, his wife, who have acquired certain interests in the Alexander portion of the premises as hereinafter related. The above parties are all appellees in this proceeding.

The defendants, Joseph W. Barbee and Merle Jane Barbee, his wife, likewise own an undivided one-third interest in the premises as joint tenants. The interests of the above parties, except the Bretthauers, was acquired by them by a warranty deed executed and delivered to them in June 1948. In July 1948, the above parties, except the Bretthauers, having all moved into the premises, entered into a contract between themselves as to the nature and extent of their ownership in the premises and made mutual covenants between themselves as to these matters, which are contained in Exhibit B, a part of the complaint herein. It was

632

covenanted, under this agreement, that the defendants Barbee were to continue to occupy the first-floor flat of the apartment building. Plaintiff Alexander was to continue to occupy the second-floor flat of the building, and the plaintiffs Scholz to occupy the third-floor flat. In February, 1951, plaintiff Alexander entered into a contract of sale for her interest in the premises with the plaintiffs Bretthauer, and under this contract they moved into and now occupy the second-floor flat.

The complaint further avers that the laundry facilities of the building are contained in a room in the nature of a utility room on the first floor of the building. Such room had been used for many years by all the tenants who had occupied the flats in the said building in common. The utility room is a separate room, entered into through a door in the hallway. The utility room had been used by the respective owners in common until May 31, 1950, and in all that time the appellants Barbee made no claim that they had the exclusive right to use the said room.

On May 30, 1950, defendants Barbee placed a lock on the room and claimed that they alone had the right to use it. On said day the plaintiffs Scholz removed the lock. With this slight interruption the utility room was used in common by the owners of the building until February 5, 1951. On that date the defendants Barbee moved the property of the plaintiffs and the utility meters of the plaintiffs from the room and excluded the plaintiffs from the use of the said room.

The complaint further alleges that the defendants have stated to the plaintiffs that they intend to remodel the first-floor flat of said building, including the utility room, into two apartments, and to rent one of them to other parties. The defendants have commenced work on said improvements by breaking a hole through the exterior wall of said building, and are now engaged

633

in making the other improvements to the first-floor apartment, the exact nature of which is unknown to the plaintiffs.

The complaint further alleges that the defendants have threatened to break the exterior wall of the building owned in common by the parties hereto, or to insert other entrances to the first-floor apartment. Plaintiffs further allege that the building of two apartments on the first floor of the building is a violation of the conditions of Exhibit B, attached to the complaint. Plaintiffs aver that by reason of the above facts they have suffered and will suffer irreparable injury and have no adequate remedy at law. By reason thereof they have no laundry facilities and the building of the additional apartment will increase the costs of the operation of the building which costs were to be borne proportionately by the co-owners under the provisions of the contract identified as Exhibit B.

The complaint further alleges that unless the defendants are restrained from remodeling the apartment and from excluding the plaintiffs from the use of the utility room, plaintiffs will be required to bring numerous suits for damages, and that therefore they have no adequate remedy at law. They ask that the defendants be restrained by injunction from excluding them from the use of the utility room and that defendants be likewise enjoined from remodeling the first floor into two apartments.

Exhibit B, attached to the complaint and made a part thereof, describes the joint ownership of the parties in the premises, and states that the parties shall occupy the premises as above mentioned in the complaint. This agreement in minute detail describes what the various owners shall do with reference to the use and enjoyment of the premises. It provides that each party shall keep his own premises in a good state of repair at his own expense; that the respective flats

occupied shall not be sublet without the consent of the other parties. The heating plant shall be maintained jointly by them and the cost of the repairs of that part of the premises not occupied by the parties shall be borne equally between them. The taxes, payment of the mortgage lien, and insurance shall be borne equally between the parties. The contract contains many other minute details with reference to the operation, the use, and the enjoyment of the flat building. It is not necessary to further recite them. After the complaint was filed, notice was given to the defendants that the plaintiffs would ask for a temporary injunction, which was prayed for in the complaint. Defendants filed a motion wherein they stated plaintiffs were not entitled to the said injunction. The court ordered the temporary injunction to issue without bond as prayed in the complaint.

The court found by its order that the complaint stated a sufficient cause of action for the issuance of the same, that bond should not be required, and the defendants be, enjoined by the temporary injunction from excluding the plaintiffs from the use of the utility room, from interfering with or harrassing plaintiffs in its use and occupancy, and the defendants be further enjoined and restrained during the pendency of this action from doing any other or further altering or remodeling of the first-floor flat of a nature designed to divide said flat into two flats.

Defendants contend that the preliminary injunction should not have been issued, that the complaint does not state a cause of action, that the plaintiffs will not suffer irreparable injury, that the plaintiffs have an adequate remedy at law by an action of ejectment or forcible entry and detainer, that the actions of the defendants constitute repeated trespasses which a court of equity will not enjoin, and hence the order issuing

the temporary injunction is unlawful and should be ordered dissolved by this court.

In *Quinn v. Fountain Inn,* 218 Ill. App. 260, the plaintiffs filed a suit for an injunction. The court entered a temporary injunction enjoining the defendants from interfering with the plaintiffs' rights in the use and occupation of certain leased premises which had been leased by the plaintiffs from the defendants. Plaintiffs were in the possession of the premises, and the defendant owners ousted them from a portion of the leased premises. An interlocutory appeal was taken by the defendants. The court says on page 263 of the opinion: ''While, as a general rule, courts of equity will not interfere by preliminary injunction, to change the possession of real property, until the right to such change is determined at law, they will do so where it is clear from the allegations in the bill that the defendants' possession is but an interruption of the prior possession of the complainant, to which the latter was entitled. Thus, where a lessor or lessee has forcibly taken possession of the leased premises in violation of the terms of the lease, he may be compelled by mandatory injunction (*ex parte,* if sufficient facts are alleged to warrant it) to surrender possession to the one entitled thereto. High on Injunctions, sec. 356; 2 Joyce on Injunctions, sec. 1249. By so doing, the status quo, as established by the terms of the lease, as described by the allegations of the bill (which we must take as true on such an appeal as this), is preserved until the controversy can be heard on its merits. Thus in *Hodge vs. Giese,* 43 N. J. Eq. 342, where complainant had leased premises from a landlord by a lease giving him access to a heater through the basement of the building, which was an appurtenance to complainant's premises, giving heat to no other part of the building, and subsequently, the landlord gave a lease of the basement to the defendant, and the latter notified the complainant that

he would not thereafter be permitted to pass through the basement to the heater, to which there was no other means of access, it was held that this was such an irreparable injury to a settled legal right in real estate as equity would protect by mandatory injunction, on an interlocutory application.''

In this case it was urged by the appellants as here that the court had no right to issue a mandatory injunction. The court says on page 265 of the opinion: ''Mandatory injunctions of the kind involved in the case at bar have frequently been recognized by the courts of this State. *Hunt vs. Sain,* 181 Ill. 372; *Baumgartner vs. Bradt,* 207 Ill. 345; *Dorman vs. Droll,* 215 Ill. 262; *Burrall vs. American Tel. & Tel. Co.,* 224 Ill. 266; *Spalding vs. Macomb & W. I. Ry. Co.,* 225 Ill. 585; *Watson vs. Smith,* 180 Ill. App. 289. In the latter case complainant was the assignee of a leasehold interest. The defendant had seized possession of the premises, claiming the right to declare a forfeiture. It was held that equity had the power to issue a mandatory injunction enjoining the defendant from interfering with the complainant's occupation of the premises. None of the cases last referred to involved a temporary injunction but the entering of such an order upon proper showing was sanctioned in *City of Rock Island vs. Central Union Telephone Co.,* 132 Ill. App. 248, where the court said: 'It is not a correct statement of the law to say that a preliminary injunction will never be made mandatory. High on Injunctions, sec. 2, says that though mandatory injunctions are seldom allowed before the final hearing, they sometimes are granted on interlocutory applications. An interlocutory injunction does not anticipate or depend upon the ultimate conclusion to be reached upon the rights involved in the litigation. It only shows that a sufficient case has been made out to authorize or require the court to preserve the property or rights in issue in status quo until a final hearing up-

637

on the merits. Usually this is accomplished by keeping everything at rest and in its present condition. Sometimes, however, this will be fatal to the rights which the complainant alleges and seeks to establish. In discussing the propriety of a preliminary mandatory injunction, in *Toledo, A. A. & N. M. Ry. Co. v. Pennsylvania Co.* (54 Fed. 730), 19 L. R. A. 387, the court thus stated the true rule. "The office of a preliminary injunction is to preserve the status quo until, upon final hearing, the court may grant full relief. Generally this can be accomplished by an injunction prohibitory in form, but it sometimes happens that the status quo is a condition not of rest, but of action, and the condition of rest is exactly what will inflict the irreparable injury upon complainant, which he appeals to a court of equity to protect him from. In such a case courts of equity issue mandatory writs before the case is heard on its merits." ' "

 As to the question whether or not the complaint must state a cause of action before a temporary injunction may issue, it has been said that the question presented is not whether the complaint is not demurrable, but does it prima facie state a cause of action. If it does, then the court in its discretion to keep the matter in status quo may issue the temporary injunction. (*Edelman Bros., Inc. v. Baikoff,* 277 Ill. App. 432.) In *McDougall Co. v. Woods,* 247 Ill. App. 170, the Appellate Court discussed the question of how far the reviewing court will go into the sufficiency of the complaint in determining whether or not a preliminary injunction should be issued. The court says on page 173 of the opinion: "In *Love v. Love,* 145 Ill. App. 150, opinion by Mr. Justice Adams, it was held that an interlocutory appeal does not bring the merits of the controversy before the reviewing court:

" 'It is not intended or comtemplated by the statute authorizing appeals from interlocutory orders appoint-

ing receivers, that on such appeals questions relating to the merits of the causes in which the interlocutory orders are entered shall be considered and passed on by the reviewing court.'

"See also High on Injunctions, 4th Ed., p. 9.

"In *Alleanza Italiana v. Papa,* 199 Ill. App. 401, it was held that on appeal from an interlocutory injunction the Appellate Court will not pass upon the sufficiency of the bill or whether it will be obnoxious to a demurrer.

"In *Baird v. Community High School Dist. No. 168,* 304 Ill. 526, it was held that it was not sufficient ground for refusing a preliminary injunction, that it is not absolutely certain that complainant has the right he claims, but that if the bill of complaint states facts which prima facie give a right to such relief, the courts should grant a temporary injunction, which will have no more effect than the mere maintenance of the status quo. In High on Receivers, chapter 1, section 8, it is said that the reviewing court, without forestalling or anticipating the final decision of the cause, will give consideration in reviewing an interlocutory order to the probability that the plaintiff will ultimately be entitled to a decree in his action.

"The statute permitting appeals from interlocutory orders was not intended primarily to provide for a review by this court of the rulings of the trial court on demurrers or to secure from this court its judgment on demurrers before the trial court has ruled thereon. A bill, when first filed, is frequently demurrable, especially bills for injunctions which are usually hurriedly prepared, but which may be made good by proper amendments which the first court has power to allow. We have no such power. The primary purpose of the statute is to permit a review of the exercise of the discretion lodged in the chancellor with the purpose of determining whether the interlocutory order probably

639

was necessary to maintain the status quo and preserve the equitable rights of the parties.''

The court held in *Baldassano v. Accettura,* 336 Ill. App. 445, that the rule that a temporary injunction should not be mandatory in its terms has its exceptions, and in that case the order granting the interlocutory injunction, mandatory in its nature, was sustained, and the court held that the chancellor committed no abuse of discretion in ordering the issuance of the injunction. It is true that as a general proposition of law the court of equity will not enjoin a trespass, the reason being that the parties have an adequate remedy at law where the title of the parties may be determined. Where the trespasses are repeated, it has been held that this fact permits a court of equity to take jurisdiction to prevent a multiplicity of suits and hence the party has not an adequate remedy at law. (*Cragg v. Levinson,* 238 Ill. 69.)

Applying the rules of law as above announced to the facts in this case, it appears to us that it was necessary to preserve the status in quo that this injunction should have been issued. The tenancies of the parties are quite complicated. The facts stated in the complaint, as well pleaded, must be admitted as true for the purpose of this review. This temporary injunction, of course, is not a final determination of the rights of the parties, but merely prevents the defendants from proceeding to enlarge their building into two apartments, which enlargement may weaken the structure. It also prevents the defendants from interfering with the plaintiffs' use of the utility room until it can be determined finally what the rights of the parties are. In view of the fact that plaintiffs would be required to bring various ejectment suits, forcible detainer actions against the alleged trespasses of the defendant, it is clear to us that the plaintiffs have no ade-

quate remedy at law, and that they might have suffered irreparable injury if the injunction had not been issued.

It is stated in 14 Amer. Juris., page 145, par. 78: ". . . . since no person is required to suffer another to destroy his property, even though the destroyer is able to pay ample compensation, the Courts are agreed that when one co-tenant commits acts of waste or other harm, that are likely to result in the destruction or permanent injury of the common estate, any of his co-tenants may have injunctive relief upon proper application."

██ These parties are all living in close proximity to each other. The situation created by the defendants excluding plaintiffs from the use of the utility room is intolerable. It was quite necessary that the status in quo be preserved under the facts alleged in this complaint. We see no distinction between their rights as against each other from those in the landlord and tenant cases above discussed. It appears to us that under the law and the authorities, the chancellor was correct in issuing the temporary injunction. To relegate them to their common-law actions while the property which supports the premises is undermined or weakened would not give them adequate relief. To permit the temporary injunction here will prevent a multiplicity of lawsuits. If the complaint states facts that give the court of equity jurisdiction on one or many grounds, it is sufficient. We think that the chancellor, in order to preserve the status in quo, and it appearing that a court of equity does have jurisdiction to issue a temporary injunction under the law as above stated, properly issued the same.

 Appellants urge that the court had no power to issue the injunction without bond. This also is a matter of the chancellor's sound discretion, and under the peculiar and complicated facts in this case we do .

not think he abused his discretion in issuing the injunction without bond. (*Skelers v. Meyer,* 246 Ill. App. 18; *Atkinson Trust & Sav. Bank v. DeRoo,* 332 Ill. App. 251.)

The interlocutory order of the trial court directing the issuance of a temporary injunction is therefore affirmed.

*Order affirmed.*