Katherine L. Gillam et al., Appellees, v. 661 Sheridan Apartments, Inc. et al., Defendants. On Appeal of 661 Sheridan Apartments, Inc., Andrew S. Krantz, and Edward G. Krantz, Individually and as Directors and Officers of 661 Sheridan Apartments, Inc., Appellants.

Gen. No. 46,144.

Opinion
filed December 2, 1953. Released for publication December 30, 1953.

ECKERT, PETERSON & LEEMING, and DANIEL A. COSTIGAN, all of Chicago, for appellants; DANIEL A. COSTIGAN, OWEN RALL, and HERBERT C. LOTH, JR., all of Chicago, of counsel.

RUSSELL J. TOPPER, of Chicago, for appellees.

MR. PRESIDING JUSTICE FEINBERG delivered the opinion of the court.

This is an interlocutory appeal by defendants from an order granting a preliminary injunction restraining until the further order of the court the corporate defendant and its officers from taking, withdrawing or paying, or otherwise applying, any of the funds, moneys, credit or other assets of the corporate defendant for the payment of expenses, costs or fees incurred, or to be incurred, by said officers in their separate or joint defense of these proceedings, and from paying or receiving any of the funds of the corporate defendant for the purpose of paying the salaries, fees or compensation of said officers in connection with the conduct, operation or management of the corporate defendant.

The injunction was issued upon the verified complaint, the sworn petition for the issuance of the restraining order, and the sworn answers to said complaint and petition. No evidence was heard.

The only question presented by this appeal is whether the chancellor abused his discretion in issuing the preliminary injunction upon the pleadings. *Forster v. Fruin & Walker Co.*, 170 Ill. App. 89. The determination of the question necessitates a recital of the essential facts alleged in plaintiffs' pleadings as well as the defendants' answers.

Plaintiffs' complaint, as amended, and the petition for the restraining order allege, *inter alia,* that the corporate defendant owns and operates an apartment building containing furnished and unfurnished apartments, which it rents; that defendant Andrew Krantz since May 1946, continuously has been the president and director of the corporation, and defendants Hanson and Edward Krantz, respectively, have been vice president and secretary and treasurer as well as direc-

tors of the corporation; that said building is encumbered with a mortgage, upon which there is due approximately $65,000; that plaintiffs have been stockholders since the date of the original issue of capital stock and are the record holders and owners of 10,907 shares of common capital stock of the corporation; that the corporate property was the subject of a reorganization plan approved in proceedings in the United States District Court, in which bondholders were allowed to exchange the defaulted bonds for stock in the corporate defendant; that under said reorganization plan, defendants Andrew Krantz, Edward Krantz and Fred Hanson have been acting as such officers and directors of the corporation; that Andrew Krantz is the principal party in interest; that Edward Krantz, his brother, has continuously and exclusively acted in the interest of Andrew; and that defendant Hanson is the nominee of Andrew and also has acted throughout the period in the interest of Andrew in the management of the corporate assets and property.

It is further alleged that the individual defendants named have for a long time and are presently engaged, jointly and severally, in a systematic and fraudulent program designed to acquire the ownership and majority control of the corporate stock of the corporate defendant for their exclusive personal benefit and profit; that to carry out their said scheme, said defendants secretly purchased and acquired a substantial number of shares of capital stock at prices substantially less than their true value by withholding and concealing from the owners of said stock their true value, and the material and necessary facts to reasonably determine such value; that they unlawfully solicited stock proxies, and thereafter wrongfully used and voted fraudulent or expired stock proxies at the only meeting of stockholders, which was a special meet-

13

ing, and not an annual meeting, held November 27, 1950; that such fraudulent or expired proxies represented shares of stock exceeding 50,000 shares; that said defendants unlawfully and fraudulently retained the management and control of said corporate property by wilfully suspending all stockholders' meetings and refusing to call stockholders' meetings, except the said meeting of November 27, 1950, which was a special meeting; that by such suspension of annual meetings, the defendant unlawfully and fraudulently prevented the stockholders from challenging the propriety of the management and authority of said defendants.

It is alleged that it became necessary for plaintiffs, after their many efforts during a period of five years to obtain information concerning the true financial condition and operation of said corporate property, to institute in February 1952, a mandamus proceeding in the circuit court of Cook county; that through such proceedings they were for the first time able to obtain any material information as to the condition of said corporation; that said defendants have charged, assessed and paid out of the corporate funds to themselves illegal, excessive and fraudulent salaries or compensation, which absorbed all of the corporate profits and earnings for the entire six-year period of their management and operation; that said defendants mismanaged the said corporation in that they grossly neglected for a number of years to file corporate annual reports with the Secretary of State, as required by law, and to pay state franchise taxes, which mismanagement resulted in the filing by the State of Illinois a proceeding to dissolve the said corporation, and a decree of dissolution was entered in said proceeding on April 30, 1947; that because of said gross neglect and mismanagement, one of the stockholders of the corporation on August 25, 1947, instituted a

partition proceeding, which sought the sale of the corporate property; that in such proceeding a receiver for the corporate property was appointed; that said proceedings were settled and were dismissed, resulting in substantial fees and expenses charged and paid out of the funds of said corporation at the direction of said defendants; and that substantial penalties, taxes, fees and costs in connection with the dissolution decree obtained by the State of Illinois for the failure to pay franchise taxes were charged to and paid out of the corporate funds.

It is further alleged that for a long time prior to March 8, 1948, defendants unlawfully violated the Federal Housing and Rent Act by charging twenty-one tenants of said corporation rents in excess of the lawful maximum; that said tenants instituted an action against the corporation in the United States District Court to recover treble damages, which action defendants were compelled to compromise and settle, and substantial fees, expenses and costs were charged to and paid out of the funds and moneys of the corporation at the direction of said defendants; and that there are in excess of 250 stockholders in said corporate defendant, to whom the benefit of the instant proceedings are extended and brought on their behalf.

Defendants, by their answers, categorically deny the charges in the complaint, as amended, and the petition, except that they admit the facts relating to the proceeding instituted by the State of Illinois for the failure to file annual reports and the payment of franchise taxes, and the institution of the partition suit following. Defendants allege as an excuse for failure to hold annual meetings that C. T. Burnett, formerly a director of the corporation, fraudulently issued and raised the number of shares of outstanding certificates of stock, which stock so issued was declared fraudulent and

15

void in an action instituted in the circuit court of Cook county by other stockholders, and a decree entered in said proceeding on November 10, 1949; that no annual meetings of stockholders were called between 1946 and 1949 because it was impossible to determine the extent of the outstanding stock so fraudulently issued and which would not be qualified to vote at meetings of stockholders; and that following the decree referred to, a meeting of the stockholders was held on November 27, 1950.

Defendants earnestly contend that the chancellor abused his discretion in issuing the temporary injunction without hearing evidence, when answers were on file denying the material averments of the complaint and petition.

An examination of the cases relied upon by defendants discloses they are either injunction proceedings where the granting of the preliminary injunction is virtually the granting of the ultimate relief upon final hearing, or cases where, under the particular circumstances, it was declared an abuse of discretion to issue the preliminary injunction. However, all of the cases agree that the primary question presented upon an appeal from a preliminary injunction is whether the chancellor abused his discretion in its issuance, and whether such a preliminary injunction destroys rather than preserves the status quo. Upon careful consideration of the charges in the complaint and the supporting petition in the instant case, and defendants' answers, we are satisfied that the chancellor did not abuse his discretion in the issuance of the preliminary injunction.

In *Forster v. Fruin & Walker Co.*, 170 Ill. App. 89, a preliminary injunction was issued to restrain the payment of salaries to the officers of the corporation. There was an answer on file denying the allegations of

16

the complaint. No evidence was heard, and the propriety of the issuance of said injunction was attacked. This court there held that the issuance of the temporary injunction had merely the effect of holding matters in status quo until the final disposition of the case, and that there was no abuse of the discretionary powers of the chancellor. To the same effect is *Fitzgerald v. Christy*, 242 Ill. App. 343.

We are convinced, weighing the relative harm to the defendants by this injunction and the benefit to the plaintiffs, that the injunction properly preserves the status quo and does no serious harm to the rights of the defendants.

Accordingly, the order is affirmed.

*Affirmed.*

KILEY and LEWE, JJ., concur.