The House of Vision, Inc., a Corporation, Plaintiff-Appellant, v. William M. Hiyane and Acro Contact Lens Service, Inc., a Corporation, Defendants-Appellees.

Gen. No. 50,078.

First District, Fourth Division.

May 5, 1965.

West and Egan, of Chicago (Lawrence J. West and Stuart West, of counsel), for appellant.

Leonard Rose, of Chicago, for appellees.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

This is an interlocutory appeal from an order denying the motion of plaintiff, House of Vision, for a temporary injunction to restrain Hiyane from "engaging directly or indirectly, in the same or similar business as plaintiff anywhere within a radius of thirty (30) miles from the office of plaintiff in Evanston, Illinois; . . ." The complaint contained a prayer that upon the final disposition of the case the injunction be made permanent and final.

The case grew out of a dispute between the plaintiff and Hiyane, a former employee. Hiyane started working for plaintiff in 1959. Prior to that time he had worked for Plastic Contact Lens Company, of Chicago, and as an interior decorator for Polk Brothers in Chicago. He had had three years of high school and had studied at the Ray-Vogue School of Interior Design for two and one-half years. His work with Plastic Contact Lens Company was largely mechanical.

Hiyane started to work for the plaintiff corporation at their main office in downtown Chicago at a salary of $75 a week. Within six months he became a lens fitter, which involved customer contact. In August 1960, the plaintiff began sending the defendant to Waukegan one day a week to service the patients in the offices of Dr. Wones and Dr. Menachof. In September 1960 Hiyane's salary was raised $100 a month. At that time he was the only contact lens fitter for

432

the plaintiff in Waukegan, Highland Park and Evanston. Each week he spent one and one-half days in Highland Park, two and one-half days in Evanston, and Wednesday in Waukegan.

Hiyane had attended three classes for interns specializing in ophthalmology in Chicago hospitals. When he first commenced to fit lenses he was supervised, but shortly began to operate independently at all three offices. Late in 1963 his salary was raised to $700 a month and he was given a car for his business and personal use. In addition, he was given a $5,000 life insurance policy, plus a hospital policy, half of which was paid for by plaintiff.

The contract in question which was entered into on February 1, 1960, between the plaintiff and Hiyane provided that the employee agreed to continue in the employ of the employer. The employer agreed to continue to employ the employee in any place which might be designated by the employer as "Contact Lens Technician" or in any other capacity which might be designated by the plaintiff, for a period of one year from and after February 1, 1960. The contract provided that during the term of his employment Hiyane should receive a base salary of not less than $4,800; that the employment should continue after February 1, 1961, until terminated by either party giving the other not less than 30 days written notice. Paragraph 6 provided:

> "Upon the termination of his employment for any cause whatsoever, the Employee shall not engage, directly or indirectly, in the same or similar business as that of the Employer, anywhere within a radius of Thirty (30) miles from any office of the Employer in, or from which, the Employee rendered services at any time during his employment with the Employer."

Hiyane gave the plaintiff 30 days notice of the termination of his employment, effective February 29, 1964. Afterwards Hiyane was employed by Acro Contact Lens Service, Inc., which is engaged in the contact lens business in Evanston, Illinois. While in the employ of the plaintiff corporation Hiyane became acquainted with the names and addresses of plaintiff's customers to whom Hiyane had dispensed contact lenses, and the names and addresses of the general suppliers and ophthalmologists with whom the plaintiff corporation did business. Plaintiff's customers were people who had had their eyes examined and brought to the plaintiff the prescriptions given them. Ninety per cent of the plaintiff's customers were referred to it by ophthalmologists. After the defendant entered the employ of defendant Acro he mailed notices announcing the opening of Acro's office in Evanston, enclosing a business card of Acro containing Hiyane's name, to a customer who had requested that Hiyane tell him of any change of employment. Similar announcements were sent to ophthalmologists. Hiyane had kept a diary containing a list of the customers. In his testimony he had stated that before he left the employ of the plaintiff he had destroyed the diary.

Hiyane filed an answer to the plaintiff's complaint.[1] The cause was assigned to a master in chancery who heard evidence and filed a report with the court. In his report the master found that Hiyane, after his employment by Acro, had mailed notices of his name, address and employment to certain of plaintiff's cus-

[1] Acro Contact Lens Service, Inc., was also made a defendant by the plaintiff and both a temporary and permanent injunction was sought against it. Acro filed an answer to the complaint and the master refused to recommend a temporary injunction against them, which is not argued in the case before us, and in consequence, we will not refer to it any further.

tomers in Evanston and to several doctors for whom the plaintiff corporation dispensed its products, and that the names of the patients and doctors became known to Hiyane while he was in the employ of the plaintiff. The master further found that in the employment of Acro, Hiyane was performing the same type of service that he had for the plaintiff and that the office of Acro was within a short distance from plaintiff's Evanston office; that numerous patients of plaintiff whom defendant met while in plaintiff's employ became patients of defendant thereafter. The master found that the plaintiff corporation had a decrease in business in its Evanston office from the time of the employment of Hiyane by Acro, and also a substantial decrease in gross sales.

The master in his conclusions set out "that a restrictive covenant, ancillary to employment, in complete restraint of trade, is unenforceable and against public policy—but where the restraint of trade is reasonable as to its terms even though unlimited as to time, the restrictive covenant, ancillary to employment, has been held enforceable and a temporary injunction granted in some instances." Plaintiff cited certain Illinois cases where a restrictive covenant ancillary to employment was held enforceable. The master found these cases were distinguishable because they dealt with the sale of a business, house, dissolution of a partnership or goodwill, and the consideration given in those instances was for part of the goodwill.

The master also concluded that there is no absolute, rigid rule to determine the fact of the duration of the restraint on the enforceability of a restrictive covenant; that the test is a question of reasonableness and there is a distinction between covenants dealing with the sale of a business, goodwill or dissolution of a partnership, and contracts which are ancillary to an employment contract. The master found that the con-

tract in question would be unenforceable and void, as such contract would preclude Hiyane from "pursuing his occupation and preventing him from supporting himself and family, which would be unduly harsh and oppressive on the said defendant, William M. Hiyane, and injurious to the public, consequently unreasonable."

The master concluded that the thirty-mile restriction in the agreement is reasonable. He also concluded, however, that because the agreement contains no time limitation it is unreasonable and therefore unenforceable. The master then concluded that with regard to plaintiff's prayer for a temporary injunction against Hiyane, the issuing or granting of a temporary injunction, irrespective of the restrictive covenant agreement, is within the discretion of the chancellor. The plaintiff need only show a prima facie case and that he raises a fair question of the right he claims. The master found that the evidence showed at least four instances of actual solicitation or contact with plaintiff's patients by Hiyane and it can be presumed that the other twenty-three patients who were at one time patients of the plaintiff corporation during the employment of Hiyane, but were now patients of Arco, were directly or indirectly solicited by Hiyane "as most of the 27 patients reside in or around Evanston, Illinois."

The master recommended to the court that an order be entered holding that paragraph 6 of the contract previously quoted be held unenforceable as unreasonable and that a request for a temporary injunction restraining the defendant from engaging directly or indirectly in the same or similar business within a 30-mile radius from the office of the plaintiff in Evanston, be denied; that a temporary injunction, upon the deposit of a $1,000 bond, be granted to the plaintiff corporation enjoining Hiyane from "soliciting or con-

436

tacting the patients or customers he serviced while in the employment of the plaintiff corporation, until the termination of a full and complete hearing."

The master also recommended that plaintiff be denied a temporary injunction against Acro, a question with which we have no concern in this present appeal, as we have previously indicated.

The plaintiff thereupon filed objections to the master's report, all of which (except one which corrected a statement with reference to a date) were denied. These objections were made exceptions and apparently argued before the court [2] which, on October 6, 1964, entered an order holding that paragraph 6 of the 1960 agreement between plaintiff and Hiyane was unenforceable and void and that it would be unduly harsh and oppressive on the defendant, William M. Hiyane, and injurious to the public, and consequently unreasonable, and that the prayer for temporary injunction based on that contract was denied.

The court granted the plaintiff, on the filing of a $1,000 bond, an injunction restraining Hiyane from soliciting patients or customers he serviced while in the employ of plaintiff corporation until the termination of a full and complete hearing by the master. The court referred the case back to the master for a full and complete hearing on the merits of the plaintiff's prayer for a permanent injunction, "subject to the terms of this order that the restrictive covenant is void."

■ The plaintiff filed an appeal to reverse the order of the court. In the appeal it was urged that a temporary injunction in accordance with the prayer of the complaint should have been issued against Hiyane, the effect of which injunction would have been

---

[2] That the exceptions were actually argued is not shown, nor any disposition of them indicated.

the severance of Hiyane's employment with Acro. The purpose of a temporary injunction is to preserve the status quo. (21 ILP Injunctions § 12.) In Cassidy v. Triebel, 337 Ill App 117, 85 NE2d 461, the court so held, and also held that "a preliminary injunction will not be granted which has the effect of granting to the plaintiffs all the relief that could be obtained by a final decree." (In that case a temporary injunction had been granted after hearing.)

It has also been held that a temporary injunction should not be granted unless a showing has been made that there is a probability of ultimate success on the part of a party in favor of whom the injunction is asked. Chicago Motor Coach Co. v. Budd, 346 Ill App 385, 105 NE2d 140; Peoples Gas Light & Coke Co. v. Cook Lumber Terminal Co., 256 Ill App 357.

The term "status quo" has been defined as "the last actual peaceable uncontested status . . . which preceded the pending suit." Cornett v. Reynolds, 289 SW2d 660 (Tex Civ App 1956). In O'Brien v. Matual, 14 Ill App2d 173, 144 NE2d 446, it is stated:

". . . The status quo which should be preserved by a temporary injunction is the last, actual, peaceable, uncontested status which preceded the pending controversy, and the necessity of the temporary injunction should be made apparent by appropriate allegations showing that a change in the status would cause irreparable injury: [Citing cases.]"

The court further stated:

". . . matters should be preserved in their present state and status quo until the cause can be disposed of on its merits; one important consideration upon an application for a temporary injunction is the relative inconvenience to be caused

438

the respective parties if the application be allowed or denied: [Cases cited.]"

In Centennial Laundry Co. v. West Side Organization, 55 Ill App2d 406, 204 NE2d 589, the court said:

"Plaintiff was required to establish, as a prerequisite to obtaining the temporary injunction, the probability of ultimate success on the merits of the case, Lipkin v. Burnstine, 18 Ill App2d 509, 152 NE2d 745, as well as the immediate necessity of an injunction to preserve the status quo and prevent irreparable harm of its rights. . . ."

In 21 ILP Injunctions § 12, it is stated that "the merits of the main controversy are not necessarily involved in the question whether a temporary injunction should be ordered where the effect of such an injunction is merely to hold property in status quo until the rights of the parties have been adjudicated." An interlocutory injunction becomes functus officio when the case is disposed of on its merits. Schuler v. Wolf, 372 Ill 386, 24 NE2d 162. In Klein's Restaurant Corp. v. McLain, 293 Ill App 54, 11 NE2d 644, the court cited and quoted from People ex rel. Chicago Bar Ass'n v. Standidge, 333 Ill 361, 164 NE 840, in which it was stated: "An interlocutory injunction is merely provisional in its nature and does not conclude a right." In that case it was further held that such injunction stands as a binding restraint until rescinded by the further action of the court. Its object is to preserve the subject in controversy, but it is not decisive of the cause upon the merits. In the Klein case the court said:

"From this rule announced by the Supreme Court it is clear that an interlocutory injunction is merely provisional in its nature and does not conclude a right. The order of the court, although in form

declares the order is a temporary one, in effect disposes of the merits of the controversy between the parties."

In the instant case the plaintiff urged that the decree of the trial court should be reversed in toto. Here the court was dealing with a restrictive covenant in an employment contract. Such contracts would not be enforced unless:

1) Such restrictions are reasonably related to safeguarding the employer without putting unreasonable restraints upon trade [Beltone Electronics v. Smith, 44 Ill App2d 112, 194 NE2d 21; Northwest Side Lumber Co. v. Layton, 239 Ill App 82; World Wide Pharmacal Dist. Co. v. Kolkey, 5 Ill App2d 201, 125 NE2d 309; Bardwick Agency, Inc. v. Hale, 29 Ill App2d 149, 172 NE2d 638; Snyder v. Hamilton, 39 Ill App2d 352, 189 NE2d 97];

2) Such restrictions are not unduly harsh and oppressive on the employee [American Cleaners & Dyers v. Foreman, 252 Ill App 122; In re Solar Textiles Co. v. Fortino, 46 Ill App2d 436, 196 NE2d 719; Brunner & Lay, Inc. v. Chapin, 29 Ill App2d 161, 172 NE2d 652]; and

3) The effect is not injurious to the public [Tarr v. Stearman, 264 Ill 110, 105 NE 957; Hicklin v. O'Brien, 11 Ill App2d 541, 138 NE2d 47].

[Sec 313–315 Restatement of Contracts.]

The master found—and it was sustained by the court—that the covenant was void. This was apparently based upon the master's conclusion that, although the area restriction in the agreement was reasonable, the absence of a time limitation alone rendered the contract unreasonable and unenforceable. With this

latter conclusion we do not agree. When there is no time limit specified in the contract it will not fall simply on that account, as a reasonable time will be inferred or imposed. It is our opinion, therefore, that the enforceability of the covenant by injunction is a matter for determination on a full hearing. The case is argued in this court as though this was an appeal from a permanent injunction, which is not the case. That question is still open for further hearing.

In McCook Window Co. v. Hardwood Door Corp., 52 Ill App2d 278, 202 NE2d 36, the court, in dealing with a contract ancillary to the sale of a business, held that such a contract depends on the reasonableness of the restraint as to time and the extent of the territory, and while neither one is conclusive, both are important factors, and furthermore, that the restraint must be reasonable as to the general public. In that case the court held that the contract was unreasonable and further said that there was "no showing that if defendants resumed the wholesale manufacturing of exterior window frames at any time while plaintiff is engaged in the same business in the same area plaintiff would suffer more than if a stranger began to compete."

In the case before us, records were introduced in evidence showing a decrease in the business of the plaintiff after Hiyane was employed by Acro, but there was no showing that the decrease was due to the activities of Hiyane. The recommendation of the master that a temporary injunction should issue against Hiyane preventing him from soliciting customers of the plaintiff was proper and the court could have issued such injunction without relying on any contract between Hiyane and the plaintiff.

In a recent case decided by the Appellate Division of the Supreme Court of New York, Audiographic of

New York Corp. v. Thermionic Corp. of America, 198 NYS2d 508 (1960), a motion was made for a temporary injunction to restrain the defendants from engaging in a business similar to that of the plaintiff. The case was decided on the pleadings without a hearing. The pleadings showed that the individual defendants named in the case had been employed by the plaintiff as sales representatives and that each of them had signed an agreement containing a restrictive covenant and that they were now employed by the corporate defendant. It was not shown that the plaintiff had lost any business as a result of the change in employment, nor was it shown that any customer had been solicited. In that case the court held that if "the broad injunction sought" had been granted in accordance with the restrictive covenant, it would prevent the defendants from " 'engaging in a line of business, the same or similar to that engaged in by Plaintiff, within a radius of thirty miles from any of the plaintiff's offices or within such area in which plaintiff sells and distributes fire and burglar warning systems, being specifically the Counties of Nassau, Suffolk, Queens and Kings.' It is contrary to public policy to unreasonably restrict 'the liberty of a man to earn his living.' " The court, however, did enter an injunction restraining the defendant, pending trial, from soliciting old customers or prospective customers referred to the plaintiff during the period when the individual defendants were employed by plaintiff, and pointed out that the purpose of a temporary injunction is only "to hold the matter in statu quo until opportunity is afforded to decide upon the merits."

The court properly entered an order restraining Hiyane from soliciting customers of plaintiff. The statement in the order that on a full hearing article 6 of the contract should be considered unenforceable

and void was improper and the case is reversed and remanded to the trial court with instructions to delete that portion of its order and to set the case for a full hearing.

Reversed and remanded.

ENGLISH and DRUCKER, JJ., concur.