County of DuPage, a Body Politic and Corporate, Plaintiff-Appellee, v. C. B. Robinette, Rose Robinette and American National Bank and Trust Company of Chicago, an Illinois Banking Corporation, as Trustee Under Trust No. 18962, Defendants-Appellants, v. City of Elmhurst, City of Oakbrook Terrace and Village of Villa Park, Intervenors-Appellees.

Gen. No. 66–77.

Second District.

December 3, 1966.

Raymond, Mayer, Jenner & Block and Thomas W. McNamara, of Chicago, for appellants.

Thomas F. Pierce, of Chicago, William V. Hopf, State's Attorney, and Popejoy, Bowman, Unverzagt & Nelson, all of Wheaton, and Peter Ernest, of Elmhurst, for appellee.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

This is an interlocutory appeal from a temporary injunction order of the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, entered on July 13, 1966, that restrained the defendants from "dumping or depositing, in any manner, any material" on property owned by the defendant "other than clean and inert earth cover which is free of organic matter and which is relatively free of stone greater than six (6″) inches in diameter and other bulky material" until further order of court.

The defendants C. B. Robinette and Rose Robinette are the beneficiaries of a land trust established at American National Bank and Trust Company under a trust agreement numbered 18962. The trust holds legal title to a sizable tract of land located near the intersection of State Route 83 and Roosevelt Road in the Village of Oakbrook Terrace in DuPage County. Apparently the Robinettes, sometime prior to August, 1964, began to fill

the low places on the tract with large quantities of diverse materials, including garbage and sewerage. On August 28, 1964, the County of DuPage filed a complaint against the Robinettes and the Bank as Trustee, that alleged the deposit on the property of "nauseous matter or substance, or waste from sewerage disposal facilities, which by reason of its quantity or decomposition, would become foul, odorous, or tend to breed harmful bacteria to become detrimental to public health or conducive to the spread of disease." The complaint further alleged that these actions violated paragraphs 26 and 27 of chapter 100½ of the Illinois Revised Statutes, and the DuPage County Health Ordinance, and requested a "Mandatory Permanent Writ of Injunction without bond" enjoining and restraining them from depositing "any septic waste material" on the property. Pursuant to that complaint and presumably after a hearing, although the record before us contains no evidence of one, the court, on September 1, 1964, ordered the issuance of a Mandatory Permanent Writ of Injunction "enjoining the Defendants and their agents and employees and all persons acting or claiming by, for, and through or under the Defendants from the further permitting, allowing or depositing of any septic waste material on the aforesaid property, and from using or permitting the use of the said land as a receptacle for the septic waste, filth and noisome and offensive substances."

On July 13, 1966, pursuant to notice, the County filed a motion that asked that the prior order of September 1, 1964, be "supplemented and amended" to require Robinette to grade his property in conformity with an attached topographical map and that he be further enjoined from the deposit of any "putrescible matter or any commercial or industrial waste (whether solid or liquid) which by its nature is capable of emitting odors which are detectable by human sense organs." Two affidavits, filed with

the motion, state that strong, unpleasant odors flow from the property to the surrounding areas. Although the defendants personally appeared on July 13, 1966, it was only to file a special appearance to object to the jurisdiction of the court over them at that time. No pleadings or affidavits responsive to the motion of the County were filed.

On that same day, the court indicated that it would create "an engineering committee consisting of five (5) members" to recommend a solution to the "health and nuisance" problem that existed on the property and ordered the issuance of a temporary injunction, already described, from which this appeal was immediately prosecuted.

 Ordinarily, a court will issue a temporary injunction where it appears that irreparable harm might be done in the event that the status quo is not maintained pending the disposition of a lawsuit. It is generally employed only in matters of emergency and then only with considerable caution by the trial court. Triangle Sign Co. v. Randolph & State Property, Inc., 16 Ill App2d 21, 29, 30, 147 NE2d 451. The application for a temporary injunction must specify the facts that require the unusual relief sought. Phelan v. Wright, 54 Ill App2d 178, 181, 203 NE2d 587; Hope v. Hope, 350 Ill App 190, 194, 112 NE2d 495. It must allege that irreparable harm will result if the status quo is impaired. McFetridge v. First Commercial Bank, 28 Ill App2d 512, 524, 171 NE2d 791. The application should be verified. Phelan v. Wright, supra.

 In addition to these requirements, the Injunction Act, chapter 69, Illinois Revised Statutes, 1965, provides that a bond be given before an injunction may issue upon such penalty, conditions and securities as required by the court. A bond may not be required where, for

170

good cause shown, the court is of the opinion that the injunction ought to be granted without bond. However, it is necessary that the excuse of the bond for good cause be justified by facts evident in the record. Town of Cicero v. Weilander, 35 Ill App2d 456, 469, 183 NE2d 40; Grossman v. Grossman, 304 Ill App 507, 513, 26 NE2d 678.

Aside from the unusual procedure involved in the issuance of a temporary injunction almost two years after a permanent injunction had been ordered, the record before us indicates that the injunction order of July 13, 1966, failed to meet the requirements enumerated in almost all respects.

The original complaint charged the defendants with the unlawful deposit of septic material on their property and a permanent injunction issued that enjoined and restrained them from continuing to do so. There is no indication or allegation that the defendants violated that injunction. Almost two years later, the County sought to expand the strictures of the injunction order to preclude the defendants from the deposit of any material other than "clean and inert earth cover" on their property. There is nothing in the motion of the County to indicate that the defendants' activities were harmful or unlawful. It did not recite that a temporary injunction was necessary to preserve the status quo, since, in fact, the injunction order was not designed to preserve, but to radically alter, the status quo by the order of an immediate cessation of defendant's landfill operations except for the earth cover. No facts were presented to indicate that an emergency existed or that irreparable harm would result if an injunction did not issue. The County did not request that a bond be excused, nor was there any evidence or finding by the court that good cause existed for that excuse.

171

■ Under the circumstances, we cannot but hold that the injunction of July 13, 1966, was improvidently issued. That portion of the order directing the issuance of the temporary injunction is reversed and the cause remanded to the trial court for further action.

Reversed and remanded.

MORAN, P. J. and SEIDENFELD, J., concur.