ROBERT DAVIS *et al.*, Plaintiffs-Appellees, *v.* EAST ST. LOUIS AND INTER-URBAN WATER COMPANY, INC., Defendant-Appellant.

(No. 70-57;

Fifth District—May 27, 1971.

JONES, J., dissenting.

Pope and Driemeyer, of East St. Louis, for appellant.

Robert R. Tepper, of East St. Louis, (Roger Scrivner, Senior Law Student,) for appellees.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

This is an interlocutory appeal by defendant from an order entered in the Circuit Court of St. Clair County on May 5, 1970, which made a temporary restraining order entered on April 20, 1970, into a preliminary injunction to remain in effect until a hearing on the merits.

Plaintiffs' petition for a temporary restraining order alleged that they had applied for water service for a house into which they were about

to move; that defendant required a $40.00 deposit before water service would be available to that house; that plaintiffs moved into the house and are living there with their two children; that they are unable to pay the $40.00 deposit; that they require water for their personal health, safety and well-being; that defendant currently is the only source available for piped water to their house; that continued lack of water in the house will cause petitioners and their children irreparable harm and injury; that they believe the charging of a $40.00 deposit is unlawful and illegal under the laws and statutes of the State of Illinois and the Constitution of the United States; that they intend to file a complaint and petition before the Illinois Commerce Commission contesting the lawfulness of that deposit; and that they believe the petition before the Illinois Commerce Commission will not be frivolous.

Plaintiffs also filed a motion with supporting affidavits to waive filing fees. On April 20, 1970, the trial court granted plaintiffs' petition and temporarily enjoined defendant from "refusing to supply water service to petitioners' said house on account of petitioners not having paid a deposit", without notice and without bond. The trial court's temporary restraining order provided (1) that petitioners would suffer irreparable harm and injury unless they were able to receive water service; (2) that petitioners intended to file a complaint contesting the legality of charging a deposit as a precondition to supplying water; and (3) that this matter is of sufficient urgency to justify the immediate entry of a temporary restraining order.

On April 27, the trial court denied defendant's motion to dissolve the temporary restraining order to quash the injunction writ and to dismiss plaintiffs' case. Plaintiffs' motion for a preliminary injunction was continued until May 5, 1970, and the temporary restraining order was continued until that date. On April 30 plaintiffs filed their first amended complaint for a preliminary injunction, which was substantially similar to their original complaint, but contained additional allegations that plaintiffs are poor people whose sole source of funds is public aid; that while they are able to pay their water bills as they fall due, they are unable to make the deposit of $40.00 or more; that they have filed a complaint and petition before the Illinois Commerce Commission contesting the lawfulness of defendant's deposit policies; that they believe these policies are violative of pars. 32, 38 and 41 of ch. 111⅔, Ill. Rev. Stat. 1969, and also the equal protection clause of the United States Constitution.

On May 5, 1970, after argument, the temporary restraining order was made into a preliminary injunction to remain in effect until a hearing on the merits.

■■ Defendant first contends that the injunction is invalid because it contests the validity of Revised General Order 172 of the Illinois Commerce Commission and therefore violates that part of par. 72 of the Public Utilities Act (Ill. Rev. Stat., 1969, ch. 111⅔, par. 72) which provides: "No proceedings to contest any rule, regulation, decision or order which the Commission is authorized to issue without a hearing and has so issued shall be brought in any court unless application shall have been first made to the Commission for a hearing thereon and until after such application has been acted upon by the Commission * * *." The present proceeding is not one to make a final adjudication of the validity of the practice of requiring a deposit, but is brought to preserve plaintiffs' right to water under Ill. Rev. Stat. 1969, ch. 111⅔, par. 38, pending the resolution of the decision pending before the Commerce Commission and the merits of the underlying dispute is but one factor to be considered in the resolution of this issue.

■■ Defendant next contends that plaintiffs have not shown that defendant has committed any legal or equitable wrong and are therefore not entitled to injunctive relief. Section 38 of the Public Utilities Act, *supra,* requires that:

"Every public utility shall, upon reasonable notice, furnish to all persons who may apply therefor and be reasonably entitled thereto suitable facilities and service without discrimination and without delay."

It is clear that plaintiffs have a *prima facie* right to water service and they alleged that the reason for denial of this service to them violates their rights under the equal protection clause of the United States Constitution and also violates pars. 32, 38 and 41 of ch. 111⅔. These allegations of illegality were sufficient to invoke the equity jurisdiction of the trial court.

■■ Defendant next contends that the granting of a temporary mandatory injunction is a drastic remedy which should be granted only in cases of great necessity and only where plaintiff would make a strong showing of probable success on the merits at the full trial to follow. We believe it suffices to say that the denial of water service to plaintiffs and their two children for their inability to pay a water deposit constitutes a showing of irreparable harm and of great necessity deserving of injunctive protection where otherwise proper. In *O'Brien v. Matual,* 14 Ill.App.2d 173, the court said at 187-188:

"* * * [A] temporary injunction should not be refused or dissolved merely because the court may not be absolutely certain the plaintiff or counterclaimant has the right he claims; the disposition of an application for a temporary injunction does not, of course, preclude in any way an inquiry into the sufficiency of the complaint or counterclaim

upon a motion to dismiss, or determine the case on the merits at all; the plaintiff or counterclaimant, however, is not required upon such an application to make out a case which would entitle him, at all events, to relief at the final hearing; he need only *prima facie* show for this purpose that he raises a fair question as to the existence of the right he claims, present circumstances which lead to a belief that he probably will be entitled to relief, if the proof sustains his allegations, and satisfy the court that matters should be preserved in their present state and *status quo* until the cause can be disposed of on its merits; one important consideration upon an application for a temporary injunction is the relative inconvenience to be caused the respective parties if the application be allowed or denied."

■■ In a case of this nature, a court will always consider the balance of convenience to the parties. In this regard the court considers whether a greater injury would be done by granting an injunction than would result from a refusal. In the present case the answer is clear that the injury to plaintiffs is great if they are not granted injunctive relief, whereas the injury to the defendant is negligible, if any. Plaintiffs' verified complaint which is unrebutted alleges that they are able to pay periodic water bills, but are unable to make any extraordinary deposit payment. Therefore, in this case the injury to defendant caused by the granting of the injunction is non-existent compared to the irreparable injury which will result if the injunction were not granted. The prevention of this irreparable injury is the keystone to the granting of injunctive relief and therefore we do not believe that the trial court abused its discretion in granting the injunction.

For the foregoing reasons the judgment of the Circuit Court of St. Clair County is affirmed.

Judgment affirmed.

EBERSPACHER, J., concurs.

Mr. JUSTICE JONES dissenting:

I must respectfully dissent from the majority opinion in this case for in my opinion the temporary restraining order and temporary injunction were improvidently issued and should be dissolved on this appeal.

The majority opinion cites *O'Brien v. Matual*, 14 Ill.App.2d 173, 144 N.E.2d 446, as authority for the granting of the temporary injunction in this case. The quotation used states that the court should be satisfied before entering a temporary injunction that matters should be preserved in their present state and *status quo* until the cause can be disposed of on its merits. No one would dispute that this is a proper statement of

the law concerning the function and use of a temporary injunction. There are a large number of cases in this state which hold that the primary purpose for the issuance of a temporary injunction is to preserve the *status quo* until there can be a final hearing upon the merits. (Cf. *House of Vision, Inc. v. Hiyane,* 58 Ill.App.2d 431, 208 N.E.2d 390; *Miollis v. Schneider,* 77 Ill.App.2d 420, 222 N.E.2d 715; *Hoffman v. City of Evanston,* 101 Ill.App.2d 440, 243 N.E.2d 478; *County of DuPage v. Robinette,* 77 Ill.App.2d 167, 221 N.E.2d 769.) The *status quo* which will be preserved by a preliminary injunction is the last, actual, peaceable, non-contested status which preceded the pending controversy. (*Keeshin v. Schultz,* 128 Ill.App.2d 460, 262 N.E.2d 753; *Diesenroth v. Dodge,* 350 Ill. App.20, 111 N.E.2d 575; *O'Brien v. Matual, supra; Lincoln Trust & Savings Bank v. Nelson,* 261 Ill.App. 370; *Gillam v. 661 Sheridan Apts., Inc.,* 1 Ill.App.2d 11, 116 N.E.2d 91; *Kabureck v. Stookey,* 1 Ill.App.2d 181, 116 N.E.2d 900; *Nestor Johnson Mfg. Co. v. Goldblatt,* 371 Ill. 570, 21 N.E.2d 723; *Arends v. Naughton,* 11 Ill.App.2d 227, 136 N.E.2d 697; *Scholz v. Barbee,* 344 Ill. App. 630, 101 N.E.2d 845; 43 C.J.S., Injunctions, Section 17.) A temporary injunction should be granted to preserve, and not to alter or destroy, the *status quo.* (*Cook v. Fletcher,* 341 Ill.App. 429, 94 N.E.2d 365.) Though the injunction order is negative in form, in that it restrains defendant "from refusing to supply water service to petitioners," it is clearly a temporary mandatory injunction. It cannot be disputed that courts, in proper cases, may issue temporary mandatory injunctions. Again, the primary purpose for the issuance of a temporary mandatory injunction is the same as other temporary injunctions, to preserve the *status quo* until there can be a final hearing upon the merits. *Quinn v. The Fountain Inn,* 218 Ill.App. 260; *Deisenroth v. Dodge, supra; Scholz v. Barbee, supra.*

The issuance of the temporary injunction clearly does not maintain the *status quo* of the case. The *status quo* was that defendant, acting pursuant to legal authority conferred by Revised General Order No. 172 of the Illinois Commerce Commission, required a security deposit from applicants for water service. Its refusal of service without the deposit was fully justified and in so refusing it did not commit any legal or equitable wrong. The temporary injunction injected for the first time a new element in defendant's operations and gave plaintiffs a right they had never had, the furnishing of water service without a security deposit. It contains no element of preserving the *status quo* and it is in this regard that it is totally without precedent. Inasmuch as it compels the defendant to do something which they had a legal right not to do and was patently contrary to the *status quo,* it clearly was improper to issue the temporary mandatory injunction.

Squarely involved in this proceeding is a rule or order of the Illinois Commerce Commission and the statutory scheme for regulation, control and administration of public utilities in the State of Illinois. The Public Utilities Statute (Illinois Revised Statutes, 1967, ch. 111⅔) shows a legislative attempt to place general supervision over all classes and types of utilities in the Illinois Commerce Commission. (*City of Geneseo v. Illinois Northern Utility Co.*, 378 Ill. 506, 39 N.E.2d 26.) The Illinois Commerce Commission is a legislative agency, created for the purpose of applying numerous details of regulatory police power over public utilities. (*Lambdin v. Illinois Commerce Commission*, 352 Ill. 104, 185 N.E. 221.) Par. 8 of the Public Utilities Act (Illinois Revised Statutes, ch. 111⅔, par. 8) confers upon the Commerce Commission power to adopt reasonable and proper rules relative to the exercise of its power. Pursuant to this power the Commerce Commission has seen fit to adopt its Revised General Order No. 172 which, in pertinent part, authorizes, but does not compel, public utilities furnishing water (or other specified services) to require a security deposit of an applicant for service. Defendant's requirement of a security deposit from plaintiffs is prefaced upon this rule. An integral part of the legislative scheme for general supervision by the Commerce Commission over utilities is the provision for judicial review of the rules, orders, regulations or decisions of the Commerce Commission. This is provided by par. 68 of the Public Utilities Act (Illinois Revised Statutes, ch. 111⅔, par. 72). Such appeals are purely statutory and must be prosecuted strictly in accordance with the requirement of the Act. (*Scherer Freight Lines, Inc. v. Illinois Commerce Commission*, 24 Ill.2d 359, 181 N.E.2d 134; *Alton R. Co. v. Illinois Commerce Commission*, 407 Ill. 202, 95 N.E.2d 76.) They fall within those actions described in Section 1 of the Civil Practice Act as "proceedings in which the procedure is regulated by separate statute."

Par. 68 of the Act provides:

"No proceeding to contest any rule, regulation, decision or order which the Commission is authorized to issue without a hearing and has so issued shall be brought in any court unless application shall have been first made to the Commission for a hearing thereon and until after such application has been acted upon by the Commission, * * *. *No Circuit Court shall permit a party affected by any rule, regulation, order or decision of the Commission to * * * become a party plaintiff * * ** in such court who has not taken an appeal from such rule, regulation, order or decision in the manner as herein provided." (Emphasis supplied.)

The statute could not be made more clear and, being specific in the

procedure to be followed, it must control and resort may not be had to a petition for injunction as plaintiffs have filed in this case. The majority opinion deals with this procedural issue by stating that "The present proceeding is not one to make a final adjudication of the validity of the practice or requiring a deposit, but is brought to preserve plaintiffs' right to water under Ill. Rev. Stat., 1969, ch. 111⅔, par. 38, pending the resolution of the decision pending before the Commerce Commission * * *". To say that the issuance of a temporary injunction is not a "final adjudication" is not a sufficient justification for evasion of the clear prohibition of par. 68 which provides that "No proceeding to contest any rule, regulation, decision or order * * * *shall be brought in any court * * *" and, "* * * No circuit court shall permit a party affected by any rule, regulation, order or decision of the Commission to * * * become a party plaintiff* * * in such court who has not taken an appeal from such rule, regulation, order or decision in the manner as herein provided." (Emphasis supplied.) It certainly cannot be said that a petition for an injunction, both temporary and permanent, which will have the effect of completely nullifying, even though temporarily, Revised General Order No. 172 of the Commission does not represent an attack upon that order. A more direct attack could scarcely be imagined. The sole remedy available to plaintiffs in this case is clearly delineated in Section 68 and must be followed.

The majority opinion states that the action is not brought to seek a final adjudication of Revised General Order No. 172 of the Commission, but is brought to preserve plaintiffs' right to water under Par. 38 of the Public Utilities Act pending the resolution of the decision pending before the Commission. Par. 38 of the Public Utilities Act provides that every public utility shall furnish to all persons who apply therefor *and be reasonably entitled thereto* suitable facilities and services. The opinion states that it is clear that plaintiffs have a *prima facie* right to water service. However, there is no showing or attempt to show that it is unreasonable for the defendant to require a deposit of persons who may make application for service. The plaintiffs have not shown themselves to be reasonably entitled to service as required by the statute and absent such showing no presumption of entitlement may be indulged. In fact, the defendant's policy of requiring a deposit is expressly authorized by Revised General Order No. 172 of the Commission and accordingly it must be presumed that such practice is reasonable and such presumption must continue until such time as the Commission, in a proper proceeding, amends or rescinds its Revised General Order.

Defendant cites and relies upon the cases of *Peoples Gas Light and Coke Company v. Slattery*, 287 Ill.App. 379, 5 N.E.2d 285, and *Peoples*

*Gas Light and Coke Co. v. Slattery*, 373 Ill. 31, 25 N.E.2d 482, as authority for the use of injunctive powers by a circuit court in a case seeking to contest a rule, order, etc. of the Commerce Commission. Of the same import is *Sprague v. Biggs*, 390 Ill. 537, 62 N.E.2d 420. These cases concerned the rate making processes of public utilities and their holding is that circuit courts derived original jurisdiction in equity cases from Article VI, par. 12 of the Constitution of Illinois and the legislature cannot validly limit those powers unless a statutory remedy is substituted which is adequate to prevent irreparable injury. Thus, after exhaustion of remedies sought before the Commission, where it was alleged that the rates imposed upon the utilities by the Commission's orders were confiscatory and deprived the utility of its constitutional right to due process of law, equity would assume jurisdiction to consider the allegations of unconstitutional confiscation.

Though it must be granted that plaintiffs' allegation of deprivation of equal protection of the law is of equal constitutional dimension as confiscation of utility property is a deprivation of due process of law, these cases still do not furnish authority for the plaintiffs' action. It is clear from a reading of these cases that the utilities there involved would have been unable to bring the action in chancery prior to unsuccessfully seeking appropriate relief before the Commission. The Supreme Court states clearly in the *Slattery* case "that the legislative action of the Commission on the question of temporary rates had been terminated." In sharp contrast to the two *Slattery* cases and the *Sprague* case, the plaintiffs here sought injunctive relief from a court of chancery before filing their complaint or initiating any action before the Commission so that the Commission was never presented with the opportunity of considering their case prior to the resort of equity.

It should be further noted that plaintiffs' chancery action does not seek any adjudication on the merits. It enjoins defendant's collection of a security deposit pursuant to the authority of a Commission order pending determination by the Commission of the legality of its order. This factor alone distinguishes the two *Slattery* and the *Sprague* cases.

The principal rationale for the majority opinion seems to be based upon a balancing of the convenience to the parties. It may be granted that the effect upon the defendant of compelling the furnishing of water service to plaintiffs without a $40.00 deposit would be nil. But the effect of the opinion cannot be limited to a balancing of convenience to the parties here. Since the opinion must stand as a general precedent its ramifications go far beyond the negligible effect of compelling service to plaintiffs without a security deposit. The rule established will apply to the operation of every public utility in the State of Illinois. Its latent

effect could be enormously disruptive, not only for defendant's operations, but of the entire statutory scheme for regulation, control and administration of public utilities in Illinois. If the remedy of injunction is available to plaintiffs in this case it is available to any person or corporation in the state who seeks to contest a rule, regulation, order or determination of the Commission prior to the time the Commission acts upon the matter in question. With the precedent established by the majority opinion it is not unreasonable to expect that there will be a class action on behalf of all poor persons being served by any utility, whether water, gas, electric, sewage, etc. to abrogate the requirement of a deposit before service is commenced. Such an event is in fact suggested by plaintiffs in the complaint they filed with the Illinois Commerce Commission which alleged, "On information and belief, respondent requires similar large cash deposits of other poor people in St. Clair County." To suspend Revised General Order No. 172 from operation while the case on its merits is making its way through hearings before the Commission and on appeal through the State and Federal Court systems could be seriously detrimental to the defendant and all utilities in the state. The practice of requiring security deposits by utilities is common and constitutes an integral part of their management, operation and financial structure. The financial integrity of defendant and other utilities could be undermined and serious detriment worked upon them and the entire public which they serve. Only the Commission with its experience and expertise in the field of public utility regulation should be able to say that Revised General Order No. 172 should or should not be suspended. A court of chancery, acting upon a two page complaint with a prayer for an injunction, the effect of which will be to suspend or nullify an order of the Commerce Commission, is ill equipped to know, or even to determine, the effect its summary action may have upon the system of public utilities in Illinois. The precedent established today could have effect beyond our apprehension.

Any judge who reads plaintiffs' complaint will certainly be moved with solicitude to plaintiffs' cause. Courts should not treat such petitions callously and require strict compliance with legal technicalities and trivial points of procedure, using them as stumbling blocks for poor persons who are seeking redress of their complaints in the courts rather than in the streets. However, the majority opinion insufficiently considers the basic and substantive rules of law invoked by plaintiffs' complaint. It is an *ad hoc* opinion which grants desired relief to needy persons but its effect on established law could be serious. Plaintiffs' is obviously a test case on behalf of themselves and all poor persons who

are patrons of public utilities which require security deposits. But it is difficult to believe that plaintiffs would go without water service pending their test case before the Commission for lack of the $40.00 deposit. Aid would doubtless be forthcoming from the Illinois Public Aid Department, the Supervisor of General Assistance of their township, or some other agency or individual able and willing to furnish the $40.00 deposit to prevent hardship to plaintiffs and their family. For this reason there is no compelling need to use injunctive powers where to do so is contrary to settled law.

I would dissolve the temporary injunction.