The City of Sycamore, Plaintiff-Appellee, *v.* James J. Gauze *et al.*, Defendants-Appellants.

(No. 70-57; ▮▮▮▮▮▮▮▮▮▮

Second District—November 30, 1970.

Edward F. Diedrich, Richard D. Larson, of De Kalb, for appellants.

Wm. H. Edwards, Jr., Charles L. Fierz, of Sycamore, for appellee.

Mr. JUSTICE ABRAHAMSON delivered the opinion of the court:

This is an interlocutory appeal from various orders entered by the Circuit Court of DeKalb County culminating in an order dated March 10, 1970, that temporarily enjoined and restrained the appellants "from using, possessing or occupying for any purposes whatever" certain real estate owned by them and described as the "Hubbard" property.

The Hubbard property is owned by James and Donna Gauze and Lawrence and Lorraine Swann and adjoins another parcel owned by them known as the Weaver property. The Hubbard property is land-locked in that it has no direct frontage on a public street or right-of-way as indicated in the following diagram.

The Hubbard property is improved with a small structure which, until 1897, served as a parsonage for a church which fronted on Charles Street. Since that time it has been used as a private residence with various intervals of vacancy. Access to Charles Street was provided through a driveway over property owned by an adjoining landowner (described

in the diagram as the "Hagan Property") until August 15, 1967. On that date, the Hubbard property was again vacated until the occupation that gave rise to the instant suit.

In the interval, the driveway was closed by the new owner of the adjoining property (Alderman Charles Hagan of the City of Sycamore) and access to Charles Street cut off. A collateral suit was instituted in regard to an alleged prescriptive right to the continued use of the Hagan driveway but is not involved in this suit.

In October, 1969, the Gauze and Swanns purchased both the Hubbard and Weaver properties and shortly thereafter rented the home on the Hubbard lot to the other appellant, Larry Tinsman.

The Revised Zoning Ordinance of the City of Sycamore, enacted in 1967, provided in Section 5 (General Provisions) Paragraph 8, that:

"Every building shall face upon a public street or permanent easement of access to a public street, which easement shall have a minimum of twenty-five (25) feet."

Although the ordinance is not clear as to whether the 25 foot minimum related to length, width or other dimension, it appears obvious that it refers to width. At the time the Weaver property was purchased, there was a short driveway of approximately 8 feet in width from Charles Street to the front of the Weaver house. Shortly after the properties were purchased, the driveway was extended the length of the Weaver property to the rear lot line and then across the Hubbard property to the house located thereon. Although the record is not clear on this point, it does

appear that James Gauze was aware, as early as the third of November, that the City considered the extension of the driveway and the occupancy of the Hubbard house as unlawful. On November 11, gravel was laid on the driveway.

On November 12, the City filed its complaint which alleged that the Hubbard property did not front on a public street or have access thereto by an easement of the required size and sought both a fine for and an injunction against the unlawful use of the properties in violation of the ordinance.

The complaint also prayed that Tinsman be enjoined from using or occupying the Hubbard home. The complaint was amended on November 25 and January 19 to correct the legal descriptions therein and join additional parties (the Swanns) as defendants. On December 3, the court granted a temporary injunction restraining the various defendants from using the Hubbard property until a 25 foot access "shall be obtained" and prohibiting the use or expansion of the driveway across the Weaver property. The order further provided that Tinsman vacate the property by January 1, 1970, and a subsequent order ruled that his wife do the same by February 13. On March 2, Donna Gauze petitioned the court to vacate the temporary restraining order and alleged, among other things, that Mrs. Tinsman was about to have a baby, that they had no other place to reside and that the home was in need of fuel oil. On March 10 a further order was entered permitting the delivery of fuel but denying the petition in all other respects. This appeal followed.

■■ Generally, a temporary injunction will be issued only where it appears that irreparable harm will occur if it is not granted prior to a final resolution of the matters at issue. (*County of Du Page v. Robinette*, 77 Ill.App.2d 167, 170; *Triangle Sign Co. v. Randolph & State Property, Inc.*, 16 Ill.App.2d 21, 29.) Although the petition for the injunction alleged that the City was unable to provide the normal governmental services needed for the safety and welfare of the area, those allegations were not supported by the evidence adduced at a hearing held on November 21, 1969. It was then disclosed that the home on the Hubbard property was heated by oil, had electricity, inside plumbing and utilized city water and sewer services. It was the opinion of Alderman Schinske that a fire truck would not be able to reach the home on an eight foot driveway. Schinske admitted, however, that the fire trucks would be no wider than the dump trucks which apparently, without difficulty, had spread the gravel over the entire driveway.

■■ The trial court indicated that the temporary order was entered to prevent a further enhancement in value of either the home or driveway until the matter could be finally resolved. It was not necessary, of

course, to prohibit all use of the property whatsoever to attain that end. Under the circumstances, the issuance of the temporary injunction was not warranted and was improper.

The orders of the trial court are therefore reversed and the cause remanded with directions for the entry of an order consistent with this opinion.

Reversed and remanded.

DAVIS, P. J. and SEIDENFELD, J., concur.